2000 ND 196

**NORTH DAKOTA WORKERS COMPENSATION BUREAU and Empire Oil Company, Plaintiffs and Appellants,**

v.

**GENERAL INVESTMENT CORPORATION; NBB Energy Partners I, L.P.; Raymond T. Duncan Oil Properties, Ltd; JEM Trust dated 2/09/93; Corlena Oil Company; KO–OP XVI, RTD; Petroro Corporation; Vincent Joseph Duncan Trust; Meyer Oil Properties; DKD Petroleum, LLC; James R. Oltmans, II; Sally Jane Oltmans; Patricia J. Barnett; Pangloss Oil Partners, LLC; Nomura Babcock & Brown Energy Corporation; Raymond F. Sebastian; MCNIC Oil & Gas Properties, Inc.; Pin Point Partners; Providence Energy Corp.; DEN Trust c/o Duncan Energy Co.; Timothy L. Smith; Bruce E. Johnston; Susan E. Johnston; Leon R. Bailey; Susan G. Bailey; Van Z. Spence; Susan K. Spence; D–T Company; David R. Duncan; Kevin V. Duncan; Leanne J. Paez Duncan; John V. Cestia; Brenda A. Cestia; Robert C. Lentz; Linda L. Lentz; William S. Fallin; Judith L. Fallin; John A. Bettridge; Elizabeth S. Bettridge; Gene R. Carlson; Cynthia L. Carlson; the City of Dickinson; Park District for the City of Dickinson; Burlington Resources; Duncan Oil**

Partners; Raymond T. Duncan, Trustee of the Raymond Twomey Duncan Trust; Lodgepole, LLC; Raymond T. Duncan; Electra Energy Company; CoEnergy Rockies, Inc., Defendants and Appellees,

The Industrial Commission of North Dakota, acting as the North Dakota Housing Finance Agency, an agency of the State of North Dakota; John J. Gulka; Marion R. Gulka; Earl J. Quick; Ruth A. Quick; Reinhold Mayer, Jr. a/k/a Reinhold Mayer; Gertrude Mayer; Diane Hatzenbuehler; Rodney A. Praus; Raynald Praus; Laura F. Praus; Marvin Morel; Judy Morel; Northern Energy Corporation; W.H. Champion; American Royalty Corp.; Lonesome Dove Petroleum, Inc.; Gregory E. Garstang; and U.S. Bank National Association, Defendants.

No. 20000116.

Supreme Court of North Dakota.

Dec. 7, 2000.

Kent A. Reierson (argued), McKennett Stenehjem Reierson Forsberg & Hermanson, P.C., Williston, for plaintiff and appellant Empire Oil Company.

Anne Jorgenson Green (appeared), Special Assistant Attorney General, North Dakota Workers Compensation Bureau, Bis-

marck, for plaintiff and appellant North Dakota Workers Compensation Bureau.

Lawrence A. Bender (argued), Pearce & Durick, Bismarck, for defendants and appellees NBB Energy Partners I, L.P., Raymond T. Duncan Oil Properties, Ltd, JEM Trust dated 2/09/93, Corlena Oil Company, KO–OP XVI, RTD, Petroro Corporation, Vincent Joseph Duncan Trust, Meyer Oil Properties, DKD Petroleum, LLC, James R. Oltmans, II, Sally Jane Oltmans, Patricia J. Barnett, Pangloss Oil Partners, LLC, Nomura Babcock & Brown Energy Corporation, Raymond F. Sebastian, MCNIC Oil & Gas Properties, Inc., Pin Point Partners, Providence Energy Corp., DEN Trust c/o Duncan Energy Co., Timothy L. Smith, Bruce E. Johnston, Susan E. Johnston, Leon R. Bailey, Susan G. Bailey, Van Z. Spence, Susan K. Spence, D–T Company, David R. Duncan, Kevin V. Duncan, Leanne J. Paez Duncan, John V. Cestia, Brenda A. Cestia, Robert C. Lentz, Linda L. Lentz, William S. Fallin, Judith L. Fallin, John A. Bettridge, Elizabeth S. Bettridge, Gene R. Carlson, and Cynthia L. Carlson.

Timothy A. Priebe, Mackoff, Kellogg, Kirby & Kloster, PC, Dickinson, for defendant and appellee the City of Dickinson.

Craig C. Smith, Fleck, Mather & Strutz, Bismarck, for defendant and appellee Burlington Resources.

Albert J. Hardy, Hardy, Maus & Nordsven, for defendant and appellee General Investment Corporation; and Mary E. Nordsven, Dickinson, for defendant and appellee Park District for the City of Dickinson.

MARING, Justice.

[¶ 1] The North Dakota Workers Compensation Bureau ("the Bureau") and Empire Oil Company ("Empire") have appealed a judgment ruling parties claiming a mineral interest in certain land through the Bureau "have no estate, right, title, lien or interest in title to the mineral estate and mineral leasehold estate in those lands," and quieting title to the subject lands in General Investment Corporation and the other defendants in the action. We conclude the Bureau and Empire have no interest in the subject mineral estate, and we affirm.

[¶ 2] Dickinson Fire and Pressed Brick Co. acquired title to the surface and the mineral estate in the subject land in 1902. In 1928, Dickinson Fire and Pressed Brick Co. mortgaged the land to secure the issuance of bonds and created a trust for the bondholders. The mortgage was foreclosed and a sheriff's certificate, dated December 4, 1934, was issued to M.A. Brannon, Trustee. On December 17, 1934, Brannon assigned the sheriff's certificate to Dickinson Clay Products Company. The State, through the Bureau, obtained a judgment against Dickinson Clay Products Company for unpaid workers compensation premiums. A May 16, 1939, sheriff's certificate was issued to the State, doing business as the Bureau. On July 30, 1940, the sheriff executed a deed to the State, reciting, in part, he does "hereby, give, grant and convey to the said State of North Dakota all the estate, right, title and interest in and to said land ... of ... said Dickinson Clay Products Company." The 1940 sheriff's deed was filed for record with the register of deeds on January 21, 1948.

[¶ 3] In 1947, proceedings were brought in district court about the administration of the trust created by Dickinson Fire and Pressed Brick Co. in 1928. In that proceeding, the district court found M.A. Brannon, as trustee for the bondholders, foreclosed and became the owner of the Dickinson Fire and Pressed Brick Co. for the benefit of the bondholders. The court found the "sheriff's certificate issued to the Dickinson Fire and Pressed Brick Company for the sale of the real estate was assigned and delivered to the said Dickinson Clay Products Company" without any consideration and in violation of an agreement between Trustee Brannon, the bondholders, and Dickinson Clay Products Company. On April 2, 1947, the court removed Brannon as the trustee of the trust and appointed J.A. O'Brien and Mar-

tin Binek as trustees. The court ordered the trustees to "institute such actions . . . as shall be necessary to recover for the said trust the title and possession of that certain real estate . . . and any other property, real or personal, in which the said trust has a claim."

[¶ 4] By petition of December 2, 1947, O'Brien and Binek sought authority to sell the subject real estate and to compromise claims. The petition recited, in part:

> That the title and ownership of said real estate is, and has been since May 16th, 1939, claimed by the State of North Dakota, doing business as The North Dakota Workmen's Compensation Bureau, under and by virtue of a judgment and execution sale obtained against Dickinson Clay Products Company . . . the property can now be sold for an amount several times in excess of its former value.

The petition recited the petitioners had received bids totaling $17,000 for the three tracts involved. The petition further recited:

> In order to consummate said sale proposed herein it is necessary to settle the claim of the State of North Dakota in said premises. . . . That petitioners have been engaged in extended negotiations with the North Dakota Workmen's Compensation Bureau, and have finally secured an offer from such agency to release its interest in the said premises and convey the same to the petitioners or such parties as may be purchasers for the sum of $1610.05, the principal amount of the judgment obtained by the State . . . thus waiving all costs and interest, and also waiving their claim to title to the real estate.

The petitioners sought authority to accept the offers they had received for the real estate, and "to settle the claim of the State of North Dakota for the sum of $1610.05 and to receive such conveyances as may be necessary to properly release the interest of the State in said premises."

[¶ 5] Minutes of a December 5, 1947, meeting of the Board of Commissioners of the North Dakota Workmen's Compensation Bureau also reflect negotiations about the Bureau's claim:

> WHEREAS, an action has been commenced by Martin Binek and J.A. O'Brien trustee of a trust . . . in which action it is alleged that the Dickinson Clay Products Company had fraudulently obtained the assets of the Dickinson Fire and Press[ed] Brick Company . . .

> WHEREAS, said action is at issue and the results of a trial of said action being uncertain, and

> WHEREAS, the bond holders represented by the said trustee have made an offer of compromise . . .

> WHEREAS, the Attorney General of the State of North Dakota, recommends that said offer be accepted for the reason that said payment will reimburse the Bureau for premiums charged against the Dickinson Clay Products Company during the period involved together with penalties and costs of judgment, said recommendation being further made upon the ground and for the reason that the Workmen's Compensation Bureau was organized for the purpose of giving protection to injured employees and not for the purpose of making any profit in real estate; and the acceptance of said compromise is further recommended for the reason that it is not certain that the State of North Dakota would prevail in the pending action, and

> WHEREAS, it appears it be to the best interest of the North Dakota Workmen's Compensation Bureau and the North Dakota Workmen's Compensation Fund to accept said offer of compromise in the sum of $1610.05.

> NOW, THEREFORE, BE IT RESOLVED that the proper officers of the State of North Dakota . . . hereby are authorized . . . to execute a quit claim deed to the General Investment Corporation of Dickinson, North Dakota . . . for the following described land. . . .

[¶ 6] On December 13, 1947, the State, for the benefit of the Bureau, executed a

quitclaim deed to General Investment Corporation of "all its right, title, interest, claim or demand in and to" the subject land. That quitclaim deed incorporated the resolution adopted by the Board of Commissioners of the North Dakota Workmen's Compensation Bureau, specifically reciting that the quitclaim deed "is made pursuant to a resolution adopted by the Commissioners of the North Dakota Workmen's Compensation Bureau on the 5th day of December, 1947, a copy of which has been recorded in the office of the Register of Deeds of Stark County, North Dakota." On December 23, 1947, the district court issued an order authorizing the bondholders' trustees to sell the subject land. On January 22, 1948, the trustees delivered a trustee's deed to the subject land to General Investment Corporation.

[¶ 7] In 1998, the Bureau and Empire brought an action to quiet title in the subject land, alleging the Bureau owned one-half of the minerals underlying the subject land under N.D.C.C. § 38–09–01 and its December 5, 1947, quitclaim deed, and alleging the Bureau had executed an oil and gas lease to Empire in 1997. General Investment Corporation claims an interest in portions of the subject land under the January 22, 1948, trustee's deed, and the other defendants in the quiet title action claim interests acquired through General Investment Corporation.

[¶ 8] On cross-motions for summary judgment, the district court concluded Brannon's assignment of the sheriff's certificate was made without consideration, in contravention of the trust, "was 'absolutely void'" under N.D.R.C.1943, §§ 59–0319 and 59–0415, and "the Bureau obtained no interest in the Subject Lands as a result of the July 30, 1940 sheriff's deed." The court concluded "the quit claim deed executed by the Bureau did not make the transaction a 'transfer' or sale within the meaning of Section 38–09–01 of the North Dakota Century Code." The court further concluded "the claims of title to the Subject Lands made by all those who claim through the North Dakota Workers Compensation Bureau by virtue of the July 30,

1940 sheriff's deed are invalid and void and without legal or equitable right." The judgment entered March 24, 2000, quieted title to the subject land "in all the Defendants, as their interests appear of record, against any and all claims of those persons, known or unknown, who claim through the Plaintiff, North Dakota Workers Compensation Bureau, by virtue of July 30, 1940 sheriff's deed."

[¶ 9] On appeal, the Bureau and Empire contend "[t]he District Court erred by re-litigating Workers Compensation Bureau's mineral ownership and holding that North Dakota's automatic reservation statute did not apply."

[¶ 10] When the State executed the quitclaim deed to General Investment Corporation in 1947, N.D.R.C.1943, § 38–0901, like N.D.C.C. § 38–09–01 now provides in nearly identical language, provided:

> In every transfer of land, whether by deed, contract, lease, or otherwise, by the state of North Dakota, or by any department thereof, fifty percent of all oil, natural gas, or minerals which may be found on or underlying such land shall be reserved to the state of North Dakota. Any deed, contract, lease, or other transfer of any such land made after February 20, 1941, which does not contain such reservation shall be construed as if such reservation were contained therein. The provisions of this section shall apply to all lands owned by this state or by any department thereof regardless of how title thereto was acquired.

Thus, the statute generally reserves fifty percent of all oil, natural gas, or minerals whenever the State transfers land owned by the State. The statute "defines and limits the power of the Board in selling state lands," *Convis v. State*, 104 N.W.2d 1, 4 (N.D.1960), and "applies according to its terms to all sales of State lands," *Haag v. State*, 219 N.W.2d 121, 130 (N.D.1974).

[¶ 11] When the State executed the quitclaim deed in 1947, N.D.R.C.1943, § 65–

0424, like N.D.C.C. § 65–04–24, specifically authorized the Bureau to adjust or compromise claims upon defaults in the payment of premiums or premium installments:

> Within twenty days after any such default, the bureau shall certify the account in default to the attorney general for the collection of the premium and accrued penalties, together with the further accruing penalties, and whenever an account has been so certified to the attorney general the bureau shall have authority to adjust or compromise the same upon recommendation of the attorney general.

Earlier, Attorney General James Morris,[1] in an opinion of February 11, 1931, said the Bureau "has power to comprise claims and charges for premiums," which "continues in the Bureau even after judgment has been secured." Attorney General Morris relied, in part, on *Frazier v. Schultz*, 54 N.D. 253, 261, 209 N.W. 373, 376 (1926), where this Court said, "it would, indeed, be a somewhat strange policy if those authorized to institute an action must necessarily go through with it to the bitter end, even though a compromise were offered which would be much more advantageous to the county." Thus, the Bureau was authorized to compromise claims arising out of premium defaults. In compromising its claim, the Bureau relied on the recommendation of the attorney general, who is the head of the State's legal department, *State v. Hagerty*, 1998 ND 122, ¶ 19, 580 N.W.2d 139, and generally " 'has control of litigation involving the state and the procedure by which it is conducted,' " *id.* at ¶ 25 (quoting *Bonniwell v. Flanders*, 62 N.W.2d 25, 29 (N.D.1953)).

▮ [¶ 12] "Transfer is an act of the parties or of the law by which the title to property is conveyed from one living person to another." N.D.C.C. § 47–09–01. The State released its claim with a quitclaim deed. A quitclaim deed conveys only the grantor's interest, if any, in property, rather than the property itself. *In re*

*Kuether*, 158 B.R. 151, 153 (Bankr.D.N.D. 1993); *Bilby v. Wire*, 77 N.W.2d 882, 888 (N.D.1956); *Frandson v. Casey*, 73 N.W.2d 436, 437 (N.D.1955). "The use of a quitclaim deed can be regarded as notice to the purchaser that there may be outstanding equities against the grantor's title." 14 *Powell on Real Property* § 81A.03[1][c] (2000).

▮ [¶ 13] "Because litigation is considered injurious to society, compromises which diminish litigation and promote a peaceful society are favored." (Citations omitted). *Hastings Pork v. Johanneson*, 335 N.W.2d 802, 805 (N.D.1983). Thus, "there is a public policy in this state to encourage settlements and to discourage litigation." *Nelson v. Johnson*, 1999 ND 171, ¶ 17, 599 N.W.2d 246. "When a settlement agreement is fairly entered into, it disposes of all disputed matters" and "is a final determination upon the merits which should be upheld regardless of the merits of the original controversy." *Hastings Pork v. Johanneson*, 335 N.W.2d at 805.

[¶ 14] Against this record of litigation, legislation, negotiation, recommendation by the attorney general, compromise, settlement, and our public policy to encourage settlement and discourage litigation, we conclude the quitclaim deed executed by the State in 1947 reflected a compromise and a settlement releasing the Bureau's doubtful claim to the subject land and resulting in recovery of unpaid workmen's compensation premiums, and did not reflect a sale resulting in a "transfer of land" covered by R.C.N.D.1943, § 38–0901. The Bureau's compromise accomplished its purpose of collecting the premiums due it for the protection of injured workers, without undercutting the public's interest in reserving mineral interests when the State sells State land. We affirm the judgment, although for a different reason than that relied upon by the district court. We need not address the contention the district court erred in relitigating the interest, if

---

1. Attorney General Morris later served on this Court from 1935 through 1964.

any, initially acquired by the Bureau, as resolution of that issue is not necessary to the determination of this appeal. *Kaler v. Kraemer*, 1999 ND 237, ¶ 22, 603 N.W.2d 698.

[¶ 15] The judgment is affirmed.

[¶ 16] GERALD W. VANDE WALLE, C.J., WILLIAM A. NEUMANN, DALE V. SANDSTROM, CAROL RONNING KAPSNER, JJ., concur.