2009 ND 33

**James H. BRAGG and J. Michael Gleason, Plaintiffs and Appellees**

v.

**BURLINGTON RESOURCES OIL AND GAS COMPANY LP, Defendant and Appellant.**

**No. 20080129.**

Supreme Court of North Dakota.

April 2, 2009.

Rehearing Denied April 30, 2009.

Lyle W. Kirmis, Zuger Kirmis, & Smith, Bismarck, for plaintiffs and appellees.

John W. Morrison, Fleck, Mather & Strutz, Bismarck, for defendant and appellant.

MARING, Justice.

[¶ 1] Burlington Resources Oil and Gas Company appeals from a district court's summary judgment in favor of James Bragg and J. Michael Gleason. The district court held that a lis pendens in a prior action brought by Bragg and Gleason against Continental Resources precluded Burlington from claiming an interest in an oil and gas lease superior to the interest

Bragg and Gleason received in settlement of their prior action against Continental. The oil and gas lease referred to as the "White Lease" was assigned to Burlington by Continental while the lis pendens was in effect. Burlington argues its interest in the oil and gas lease is not subject to the settlement in the prior action under the doctrine of lis pendens. We conclude Burlington's interest in the lease is subject to the settlement in the prior action under the lis pendens and the plain language of N.D.C.C. § 28–05–07, and we affirm the judgment.

I

[¶ 2] In 1999, Bragg and Gleason sued Continental regarding conflicting claims to oil and gas leases in Bowman County, including the "White Lease," which is the subject of this matter. In November 2000, Continental filed a lis pendens, which is a written notice of a pending lawsuit involving real property, in that action against the real property described in the complaint, including the White Lease. Meanwhile, as part of separate litigation between Continental and Burlington, Continental assigned its interest in several oil and gas leases, including the White Lease, to Burlington in January 2001. In the action by Bragg and Gleason against Continental, the district court granted Continental partial summary judgment in September 2003, concluding Continental's interest in the White Lease was superior to the interest of Bragg and Gleason. However, the parties ultimately entered into a settlement agreement in that action in June 2004, in which Bragg and Gleason agreed to "assign all right title & interest in all leases & minerals to [Continental] except in [the] White Lease," and Continental agreed to issue a check to Gleason for $325,000 and to "quitclaim interest in White Lease to James Bragg." Continental thereafter issued a quit claim deed to Bragg, dated July 7, 2004, for "all right, title, and interest, if any, that Continental may now own" in the White Lease, and the deed was recorded on July 9, 2004. On July 9, 2004, the parties, through counsel, executed a stipulation for dismissal with prejudice of all their claims and counterclaims, which stated the action had been "fully compromised and settled." On July 12, 2004, the district court considered the parties' stipulation for dismissal and ordered dismissal with prejudice of all their claims and counterclaims. The parties' settlement was not incorporated in the judgment, and a judgment of dismissal with prejudice was filed in Bowman County on July 13, 2004. A cancellation of the lis pendens was filed with the Bowman County Recorder on August 12, 2004.

[¶ 3] In 2005, Bragg and Gleason sued Burlington in this quiet title action to determine conflicting claims and title to the White Lease and for an accounting for proceeds from that lease. Burlington moved for summary judgment, claiming its interest in the lease was superior to the interest of Bragg and Gleason and its interest was not barred by the lis pendens.

[¶ 4] The district court granted summary judgment in favor of Bragg and Gleason, concluding even though the settlement agreement in the prior action by Bragg and Gleason against Continental was not incorporated into the final judgment, the settlement agreement was part of "all proceedings" taken after the lis pendens was filed under N.D.C.C. § 28–05–07. The court decided the settlement agreement was binding on Burlington and precluded Burlington from claiming a priority in the White Lease because the lis pendens was filed in that action before Continental assigned its interest in the White Lease to Burlington in January 2001, and the settlement agreement resulted in a recordable instrument, the quit

claim deed from Continental to Bragg. After an accounting, the court ordered Burlington to pay Bragg and Gleason more than $750,000 in proceeds from the White Lease.

## II

[¶ 5] This Court's standard for reviewing a summary judgment is well established:

Under N.D.R.Civ.P. 56, summary judgment is a procedural device for promptly resolving a controversy on the merits without a trial if there are no genuine issues of material fact or inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law. The party moving for summary judgment must show there are no genuine issues of material fact and the case is appropriate for judgment as a matter of law. A district court's decision on a motion for summary judgment is a question of law that we review de novo on the record. In determining whether summary judgment was appropriately granted, we view the evidence in the light most favorable to the party opposing the motion, giving that party the benefit of all favorable inferences which can reasonably be drawn from the record.

*Erickson v. Brown*, 2008 ND 57, ¶ 22, 747 N.W.2d 34 (citations omitted).

## III

[¶ 6] Burlington argues the district court erred in deciding the settlement agreement in the action by Bragg and Gleason against Continental divested Burlington of its interest in the White Lease under the doctrine of lis pendens. Burlington asserts the purpose of a lis pendens is to give notice of the pendency of an action to subsequent purchasers and not to change the parties' obligations or the priority of their obligations. Burlington contends the settlement agreement in the action by Bragg and Gleason against Continental did not require Continental to relinquish Burlington's interest in the White Lease. Burlington claims the settlement agreement was not a "proceeding" entitled to preclusive effect under the doctrine of lis pendens and N.D.C.C. § 28–05–07, because neither the settlement nor the resulting quit claim deed were incorporated into the judgment dismissing that action with prejudice.

[¶ 7] The issue in this case involves the effect of the 2000 lis pendens and the subsequent settlement agreement in the action by Bragg and Gleason against Continental on the 2001 assignment by Continental to Burlington under the statutory provision for a lis pendens in N.D.C.C. § 28–05–07, which provides:

In a civil action in a district court affecting the title to real property, the plaintiff, at the time of filing the complaint or at any time afterwards, or the defendant, when the defendant sets up in the defendant's answer an affirmative claim for relief affecting the title to real property and demands substantive relief, at the time of filing the defendant's answer or at any time afterwards, may file for record with the recorder of each county in which the real property is situated a notice of the pendency of the action, containing the names of the parties, the object of the action, and a description of the real property affected. From the time of filing only shall the pendency of the action be constructive notice to a purchaser or encumbrancer of the property affected thereby, and every person whose conveyance or encumbrance is subsequently executed or subsequently recorded is deemed a subsequent purchaser or encumbrancer with notice and

is bound by all proceedings taken after the filing of such notice to the same extent as if that person were a party to the action. For the purpose of this section, an action is deemed to be pending from the time of filing such notice, but such notice is of no avail unless it is followed by the first publication of the summons, or by the personal service thereof on a defendant, within sixty days after such filing.

[¶ 8] The interpretation of a statute is a question of law, fully reviewable on appeal. *Baukol Builders, Inc. v. County of Grand Forks*, 2008 ND 116, ¶ 22, 751 N.W.2d 191. This Court's primary objective in interpreting a statute is to ascertain legislative intent. *Id.* Words of a statute are given their plain, ordinary, and commonly understood meaning unless a contrary intention plainly appears. N.D.C.C. § 1–02–02. Statutes are construed as a whole and are harmonized to give meaning to related provisions. N.D.C.C. § 1–02–07. If the language of a statute is clear and unambiguous, "the letter of [the statute] is not to be disregarded under the pretext of pursuing its spirit." N.D.C.C. § 1–02–05. If the language of a statute is ambiguous, however, a court may resort to extrinsic aids to interpret the statute. N.D.C.C. § 1–02–39. Statutes must be construed to avoid absurd and ludicrous results. *Stutsman County v. State Historical Soc'y*, 371 N.W.2d 321, 325 (N.D.1985). *See* N.D.C.C. § 1–02–38(3) and (4). We construe statutes in a practical manner, and we consider the context of statutes and the purpose for which they were enacted. *McDowell v. Gillie*, 2001 ND 91, ¶ 11, 626 N.W.2d 666.

[¶ 9] This Court has recognized the purpose of a notice of lis pendens is to "let the world know that there is an action pending, and everybody interested can go to the clerk's office, and there learn the particulars from the complaint." *Plott v. Kittelson*, 58 N.D. 881, 890, 228 N.W. 217, 220 (1929). A "lis pendens is notice of all facts apparent on the face of the pleadings, and of those facts of which the facts so stated necessarily put the purchaser on the inquiry." *Id.* The filing of a lis pendens binds a purchaser of property described in the lis pendens to "all that in like manner affects his granter." *Borden v. Graves*, 20 N.D. 225, 237, 127 N.W. 104, 109 (1910). The notice of lis pendens

> constitutes and gives constructive notice to the public of the pendency of the action and of its object and purpose, so that any one not a party to the action, holding an outstanding unrecorded title or right, may appear in the action, assert the same, and have the superiority of his claim adjudicated; otherwise, by the terms of the statute, he will "be bound by all proceedings taken after the filing of such notice to the same extent as if he was a party to the action."

*McKenzie County v. Casady*, 55 N.D. 475, 484–85, 214 N.W. 461, 465 (1927).

[¶ 10] The plain language of N.D.C.C. § 28–05–07, when read in its entirety, says the filing of a notice of lis pendens is constructive notice of the pendency of the action to a subsequent purchaser or encumbrancer and the subsequent purchaser or encumbrancer is "bound by all proceedings taken after the filing of such notice to the same extent as if that person were a party to the action." The plain language of N.D.C.C. § 28–05–07 applies to "all proceedings" taken after the filing of the lis pendens. One source defines "proceeding" to mean "a legal action." *Merriam–Webster's Collegiate Dictionary* 990 (11th ed. 2005). Another source defines "proceeding" as "the course of procedure in a judicial action or in a suit in litigation." *Webster Third New International Dictionary* 1807 (1971). Yet an-

other source defines "proceeding" as "the institution of a sequence of steps by which legal judgments are invoked." <http://dictionary.reference.com/browse/proceeding> In another context, this Court has recognized that a "proceeding" includes "all possible steps in an action from its commencement to the execution of judgment." *Emo v. Milbank Mut. Ins. Co.*, 183 N.W.2d 508, 513–14 (N.D.1971) (citing *Black's Law Dictionary* (4th ed. 1951) for general definition; holding under privilege for law of defamation, proceeding includes some form of governmental process and does not encompass correspondence by private corporation with clients). Under those authorities, the plain and ordinary meaning of "all proceedings" taken after the filing of a notice of lis pendens includes the course of procedure or sequence of steps in a legal action and does not preclude settlements.

[¶ 11] The plain meaning of "all proceedings" in this context is supported by the " 'public policy in this state to encourage settlements and to discourage litigation.' " *Olander Contracting Co. v. Gail Wachter Invs.*, 2002 ND 65, ¶ 46, 643 N.W.2d 29 (quoting *Nelson v. Johnson*, 1999 ND 171, ¶ 17, 599 N.W.2d 246). "Because litigation is considered injurious to society, compromises which diminish litigation and promote a peaceful society are favored." *Hastings Pork v. Johanneson*, 335 N.W.2d 802, 805 (N.D.1983) (citation omitted). "When a settlement agreement is fairly entered into, it disposes of all disputed matters" and "is a final determination upon the merits which should be upheld regardless of the merits of the original controversy." *Id.*

[¶ 12] The public policy for encouraging settlements and the inclusive language of N.D.C.C. § 28–05–07 for "all proceedings taken after the filing of [the] notice [of lis pendens] to the same extent as if that person were a party to the action," supports interpreting N.D.C.C. § 28–05–07 to include settlements as part of "all proceedings."

[¶ 13] Other authorities have held that purchasers of property described in a lis pendens take the property subject to the decision in the pending proceeding, which includes settlements. *Hamman v. Southwestern Gas Pipeline, Inc.*, 821 F.2d 299, 303–06 (5th Cir.1987); *Montserrat Overseas Holdings v. Larsen*, 709 F.2d 22, 24 (9th Cir.1983); *Manzo v. Shawmut Bank*, 291 N.J.Super. 194, 677 A.2d 224, 229–30 (App.Div.1996). *See also* 51 Am.Jur.2d *Lis Pendens* § 59 (2000); 54 C.J.S. *Lis Pendens* § 43 (2005).

[¶ 14] In *Montserrat*, 709 F.2d at 24, the court said it "is uniformly recognized that one who acquires an interest in land subject to an existing interest which is the basis of a lawsuit takes subject to the judgment in that suit even if that judgment is pursuant to a settlement between the parties." The court also explained there were no facts in that case supporting an inference the parties fraudulently or collusively settled the prior action. *Id.*

[¶ 15] In *Hamman*, 821 F.2d at 304 (citations omitted), the court discussed the effect of a lis pendens under Texas law:

A prospective purchaser of the property is informed by the lis pendens notice that the title to the property is in dispute and any interest it acquires is subject to the outcome of that pending litigation. A lis pendens purchaser is charged with the duty to investigate the dispute, discover its scope, facts, and applicable defenses and counter-defenses, and, if necessary, to ensure that any defenses favorable to it are interposed by the party from which it will gain title. Texas law does provide, however, that the lis pendens notice does not inform a prospective purchaser of matters not ev-

ident from the pleadings and papers in the pending litigation or matters not reasonably discoverable.

A lis pendens purchaser is not favored under Texas law and a purchaser with notice of the lis pendens proceeds at its own risk. The purchaser bears the burden of protecting its interest during the litigation. The lis pendens purchaser is bound by agreements entered into by its grantor during the course of the litigation and is charged with protecting its interests which could be affected by such agreements. As the leading encyclopedia on Texas law states:

> The grantee or [lis pendens] purchaser stands in the shoes of his vendor, and acquires only whatever title remains in his vendor at the termination of the suit. If the litigation is won by the grantor the conveyance is effective. If not, the grantee may acquire nothing.

[¶ 16] In *Hamman,* 821 F.2d at 305–06, the court rejected an argument by a lis pendens purchaser that the purchaser's interest was not affected by a judicially approved settlement between the lis pendens grantor and a third party in the underlying lawsuit. The court said a lis pendens purchaser's interest was subject to the outcome of the pending action, whether the outcome was arrived at by litigation or by agreement. *Id.* The court said the lis pendens notice and the operative pleadings in the underlying action gave the lis pendens purchaser constructive notice that its grantor's title to the land was disputed and subject to divestment in the underlying action, and the court concluded the lis pendens purchaser's interest was subject to a settlement in that action. *Id.* at 304–06. The court cautioned that it "express[ed] no opinion on a situation where a purchaser is not informed by the lis pendens notice and

active pleadings of a result arising out of a later settlement." *Id.* at 306 n. 3.

[¶ 17] In *Manzo,* 677 A.2d at 226–27 (citations omitted), the New Jersey court considered that state's lis pendens statutes and said:

> Under the common law doctrine of lis pendens, the filing of a lawsuit served as constructive notice to any subsequent purchaser or lienholder that title to the property was contested. The lis pendens statute ... altered this rule by requiring that a notice of lis pendens be filed and recorded for subsequent interest takers to have constructive notice of the pendency of a lawsuit and to take subordinate to the rights the plaintiff derives in the outcome of the litigation.
>
> ...
>
> The primary purpose of the notice of lis pendens is to preserve the property which is the subject matter of the lawsuit from actions of the property owner so that full judicial relief can be granted, if the plaintiff prevails. The notice of lis pendens also provides constructive notice to subsequent interest takers in the property that a dispute exists concerning rights to the property. Thus, the notice binds subsequent interest takers to the outcome of the litigation.

The court held a mortgage recorded after the filing of a lis pendens and during its effective term was not entitled to priority over a later mortgage granted in settlement of the underlying litigation, even though the settlement did not result in a judgment. *Id.* at 229–30. The court explained the lis pendens statutes, when read as a whole to reach a sensible result, contemplated that property disputes subject to a notice of lis pendens might be settled. *Id.*

[¶ 18] Here, although the lis pendens is not part of this record, the parties concede it complied with the requirements of

N.D.C.C. § 28–05–07, which authorizes the filing of a lis pendens for claims "affecting the title to real property" in the county where the real property is located and requires the lis pendens to "contain[ ] the names of the parties, the object of the action, and a description of the real property affected." The actual pleadings in the action by Bragg and Gleason against Continental also are not part of this record, but the district court's pre-settlement decision in that case is part of this record and Burlington does not deny the prior action concerned the validity of competing interests in the White Lease. Burlington was entitled to appear in that action and have its interest adjudicated. *See McKenzie County*, 55 N.D. at 484–85, 214 N.W. at 465. According to Burlington's counsel, Burlington decided to rely on an indemnification agreement with Continental and did not intervene in the prior action. The prior action was settled and Continental's quit claim deed to Bragg was recorded while the lis pendens was in effect. *Cf. Perry Park Country Club, Inc. v. Manhattan Sav. Bank*, 813 P.2d 841, 842–44 (Colo. Ct.App.1991) (deed to grantee, which was purportedly issued in furtherance of settlement, was executed after action against grantee terminated and lis pendens expired; any disabilities that existed by virtue of lis pendens had merged into, or been terminated by, final decision adverse to grantee). Here, although the judgment in the prior action by Bragg and Gleason against Continental dismissed the complaint and counterclaims with prejudice without specifically incorporating the settlement, the plain language of N.D.C.C. § 28–05–07 applies to "all proceedings" to the same extent as if Burlington was a party to that action and does not require a settlement to be incorporated into the judgment. Moreover, Burlington was placed on notice of all facts apparent on the face of the pleadings in the prior action to the same extent as Continental, and the stipulation for dismissal of that action, which was filed with the judgment, provided notice that the action had "been fully compromised and settled." Under the plain language of N.D.C.C. § 28–05–07 and the purpose of a lis pendens, Burlington "is bound by all proceedings taken after the filing of such notice [of lis pendens] to the same extent as if [Burlington] were a party to the action."

[¶ 19] Burlington nevertheless argues that because Bragg and Gleason knew about Continental's assignment to Burlington and knew the effect of their quit claim deed from Continental, Burlington's interest has priority over the interest of Bragg and Gleason despite the lis pendens. Burlington also claims the settlement in the action by Bragg and Gleason against Continental did not include an acknowledgment about the superiority of various leases or a relinquishment by Continental of Burlington's interest in the White Lease. Although a quit claim deed conveys only the grantor's interest, if any, in property, *see North Dakota Workers Comp. Bureau v. General Inv. Corp.*, 2000 ND 196, ¶ 12, 619 N.W.2d 863, Burlington's argument ignores the effect of the lis pendens statute, which states "[f]rom the time of filing," the lis pendens is constructive notice to a purchaser or encumbrancer of the property, and the purchaser "is bound by all proceedings taken after the filing of such notice to the same extent as if that person were a party to the action." Burlington took its assignment of the White Lease from Continental subject to the outcome of the litigation by Bragg and Gleason against Continental. As a result of the outcome of that action, Continental conveyed all of its interest in the White Lease to Bragg, leaving Continental with no interest in the White Lease. Therefore Burlington had no interest in the White Lease

when judgment was entered in the prior action.

[¶ 20]  We conclude Burlington is bound by the settlement in the prior action, which is referenced in the stipulation for dismissal of that action, and Burlington took its interest in the White Lease subject to the outcome of that litigation, including the settlement.  We therefore conclude the district court did not err in deciding Burlington's interest in the White Lease was subject to the lis pendens.

IV

[¶ 21]  We affirm the judgment.

[¶ 22] GERALD W. VANDE WALLE, C.J., and DANIEL J. CROTHERS, concur.

VANDE WALLE, Chief Justice, concurring specially.

[¶ 23]  I agree with the majority opinion's discussion of the effect of the lis pendens on the transactions of the parties to this lawsuit.  However, I am less clear that the same holding applies between the filer of the lis pendens, in this case Continental Resources, and the parties when the filer has dealt with both parties to the transactions.

[¶ 24]  Rule 19, N.D.R.Civ.P., provides for joinder of persons needed for a just adjudication.  Under subsection (a)(1), a party must be joined if "in the person's absence complete relief cannot be accorded among those already parties."  Here it was Continental Resources that dealt with Burlington Resources and with Bragg and Gleason.  It seems to me Continental should have been joined as a party in order to grant "complete relief" to Burlington Resources and Bragg and Gleason. Neither party raised the issue of joinder in either the trial court or this Court.  Although at oral argument, in response to

the question of why Continental Resources was not a party, Burlington Resources told us there was an indemnity agreement in effect, that agreement as well as the lis pendens are not part of the record before us.  But, on appeal, this Court may consider questions about joinder of an absent party even though it was not raised in the trial court.  *Stonewood Hotel Corp., Inc. v. Davis Development, Inc.*, 447 N.W.2d 286 (N.D.1989).  However, we have also held that the decision to not name a party can reasonably be interpreted as an election to forego that right under Rule 19.  *Wayne–Juntunen Fertilizer Co. v. Lassonde*, 456 N.W.2d 519 (N.D.1990).

[¶ 25]  It may be Burlington Resources did not request that Continental be joined as a party because of an indemnity agreement that would prevent any further relief. In any event I conclude the failure to request Continental be joined as a party to the lawsuit can reasonably be interpreted as an election to forego that right under N.D.R.Civ.P. 19.  I therefore concur in the majority opinion.

[¶ 26] GERALD W. VANDE WALLE, C.J.

KAPSNER, Justice, dissenting.

[¶ 27]  I respectfully dissent.

[¶ 28]  I agree with the majority's holding that proceedings include settlement for purposes of determining the effect of the lis pendens.  However, I am concerned that the effect of the majority opinion is to ignore the status of the underlying litigation and the terms of its settlement and to elevate the legal effect of the quitclaim executed as a result of the settlement.  A lis pendens purchaser is not bound by a result not suggested by the record of the proceedings, including the settlement.

[¶ 29]  The purpose of the underlying litigation, regarding which the lis pendens

was filed, was to determine the priority between Bragg and Gleason, as plaintiffs, and Continental Resources, as defendant, to the lease at issue in this case which the majority describes as the White lease. A partial summary judgment was entered in that litigation holding as a matter of law, that "the Diamond lease assigned to Continental is valid and superior to the subsequent leases covering the same land given by White to Bragg, and title is quieted to the leasehold interest created by the Diamond lease and assigned to Continental as to any and all adverse claims of the plaintiffs, their successors, or assigns." This partial summary judgment was entered September 11, 2003. At the time this partial summary judgment was entered, Continental had already assigned its interest in the lease to Burlington.

[¶ 30] It was in the context of this ruling, adverse to the interests of Bragg and Gleason, that the parties decided to enter into the settlement. As noted in paragraph 2 of the majority opinion, that settlement included assignments of all leases at issue, except the White lease, to Continental, a quitclaim from Continental to Bragg and Gleason of the White lease, and a check from Continental to Gleason in the amount of $325,000. As a result of this settlement, a judgment dismissing the action "on the merits, with prejudice," was entered. A judgment of dismissal with prejudice, based upon the parties' stipulation, operates as an adjudication of the merits, prohibiting the subsequent reopening of the partial summary judgment. *Rugby Milling Co. v. Logosz*, 261 N.W.2d 662, 664–65 (N.D.1977).

[¶ 31] A quitclaim conveys no more than the interest held by the grantor at the time of its delivery. *Bilby v. Wire*, 77 N.W.2d 882, 888 (N.D.1956) (citation omitted) ("A quitclaim deed is one which purports to convey, and is understood to con-

vey, nothing more than the interest or estate in the property described of which the grantor is seized or possessed, if any, at the time, rather than the property itself."). Yet, the trial court reasoned:

> Under any reasonable interpretation of the settlement agreement it is clear that Continental was giving up its claim to the White lease. It defies logic and seems inconceivable that Bragg and Gleason would accept a quit claim deed from Continental as part of a settlement agreement and know they were receiving nothing. When reasonable minds can reach only one conclusion from the evidence as to the terms of settlement it becomes a question of law and summary judgment is appropriate.

[¶ 32] Aside from the fact that the comment ignores the receipt of $325,000 as part of the settlement in the context of an existing adverse ruling and aside from the fact that courts do not usually look at the adequacy of consideration in a contract (*Harrington v. Harrington*, 365 N.W.2d 552, 555 (N.D.1985)), the court's reasoning ignores the state of the record that it was using to decide the issue as a matter of law. The court relies on an affidavit of counsel to establish the basis of the settlement. That affidavit includes the deposition testimony of James Bragg in which he testifies that he knew of the prior assignment from Continental to Burlington and he understood the effect of a quitclaim.

[¶ 33] On the issue of the prior assignment by Continental, Bragg testified:

Q. Did you talk about what terms you would be willing to settle on with Mr. Gleason before he met with Mr. Hamm? ...

A. I don't recall that we discussed specific amounts. We were trying to get this thing settled. We were trying to get paid. But I did mention that I would—since I felt that I

owned the lease in Burlington's unit and Burlington thought that I owned the lease in Burlington's unit, that I wanted—did not want to—I wanted to emerge from this settlement as still owning the White lease.

Q. And you knew that Continental didn't own the White lease at that point; right?

A. As far as I was concerned, they didn't own it.

Q. And, in fact, they didn't even own what title there was in their 1995 lease; is that right?

A. I didn't think they did.

Q. And you knew that that interest had been assigned to Burlington?

A. Yes.

Q. Did you discuss with Mr. Gleason whether you should attempt to get Burlington to participate in the settlement?

A. No.

[¶ 34] On the subject of the quitclaim deed, Bragg testified:

Q. Was there any discussion that you were involved in relating to the form of the quit claim of Continental's interest in the White lease?

A. No. There was no discussion on the quit claim deed, except that they would convey everything to us. That was it.

Q. And you knew they had already conveyed that interest to Burlington; right?

A. Yes.

Q. And as a landman, you know that a quit claim does nothing more than indicate that the party no longer claims an interest in certain property?

A. That's correct.

Q. So you knew that the quit claim really had no legal effect?

A. I wouldn't say that.

Q. What legal effect—

A. It's got to have some effect.

Q. What effect do you believe it had?

A. I believe it says that they no longer have any claim to it.

Q. That Continental no longer has any claim to it?

A. Mm-hmm. They convey whatever interest they own to the grantee.

[¶ 35] It appears from the testimony of Bragg that the settlement was entered without any misunderstanding about the status of Continental's interest or the legal effect of the intended document when they entered into the settlement. Yet, the trial court gives greater effect to the quitclaim than given by our jurisprudence because, as a matter of law, it "defies logic" to do otherwise.

[¶ 36] Even though Burlington, as a lis pendens purchaser, is bound by the litigation, there is nothing in the status of that litigation, including the partial summary judgment, the judgment of dismissal with prejudice, or the terms of the settlement, that mandates the result of the majority opinion. Therefore, I dissent and would reverse the decision of the trial court.

[¶ 37] CAROL RONNING KAPSNER, DALE V. SANDSTROM.