2011 ND 69

**Jim KOST, Plaintiff and Appellee**

v.

**Allen M. KRAFT, Defendant and Appellant.**

No. 20100159.

Supreme Court of North Dakota.

March 25, 2011.

Derrick Lance Braaten, Bismarck, N.D., for plaintiff and appellee.

Chad Rory McCabe, Bismarck, N.D., for defendant and appellant.

MARING, Justice.

[¶ 1] Allen Kraft appeals from a summary judgment dismissing his counterclaims against Jim Kost for money due under alleged oral agreements for Kraft to lease Kost combining equipment in 2003 and 2004 and for Kraft to do custom combining for Kost in 2005. Kraft argues the district court erred in deciding his claimed oral agreements were not enforceable under the statute of frauds and his counterclaims could not be pursued in this action because they were not disclosed in his prior bankruptcy proceeding. We conclude there are disputed issues of material fact about application of the statute of frauds to the claimed oral lease agreement and this record does not establish that Kraft's bankruptcy proceeding precludes him from pursuing the counterclaims in this action. We reverse and remand.

I

[¶ 2] Kost and Kraft formerly operated a custom combining partnership, Kost and Kraft Harvesting, and they ceased doing business as a partnership in the spring of 2003. Although they terminated their partnership in 2003, they continued to share equipment and work in 2003 and 2004. In May 2008, Kost sued Kraft to formally dissolve the partnership. Kost claimed the parties shared equipment and work during their partnership and disputed their interests in $11,741.85 worth of equipment Kost had sold at an auction in 2007. Kost sought final disposition of the proceeds from the sale of that equipment and damages for Kraft's alleged conversion of a planter. Kraft counterclaimed, alleging that after the partnership was terminated in 2003, Kost entered into an oral lease agreement to pay Kraft fair rental value to use some of Kraft's combining equipment in 2003 and 2004. Kraft claimed Kost failed to pay him about $150,000 due under the oral lease agreement. Kraft also claimed the parties had an oral agreement for Kraft to do work for Kost in 2005 and Kost failed to pay Kraft $10,000 for that work.

[¶ 3] The district court granted summary judgment dismissal of Kraft's counterclaims, concluding the claimed oral lease agreements were not enforceable because they were not in writing and were not partially performed. The court said part performance of an oral contract which is consistent only with the existence of the alleged contract removes it from the statute of frauds and concluded "Kraft has not convinced the Court that payment was indeed required as he asserts in his counterclaims. It appears the agreements between the two over the years consisted mostly of the exchange of work and/or equipment. Thus, the part performance exception does not apply here to validate the oral contracts." The court also said Kraft's "counterclaims do not appear to have been properly disclosed during [his] bankruptcy proceedings" and decided that failure precluded him from pursuing the claims in this action. A jury thereafter returned a special verdict finding Kraft had not converted a planter and distributing to the parties the proceeds from Kost's sale of equipment at the auction sale.

II

[¶ 4] The district court decided the issues raised in this appeal in the posture of summary judgment. Our standard for reviewing a summary judgment is well established:

Under N.D.R.Civ.P. 56, summary judgment is a procedural device for promptly resolving a controversy on the merits without a trial if there are no genuine issues of material fact or inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law. The party moving for summary judgment must show there are no genuine issues of material fact and the case is appropriate for judgment as a matter of law. A district court's decision on a motion for summary judgment is a question of law that we review de novo on the record. In determining whether summary judgment was appropriately granted, we view the evidence in the light most favorable to the party opposing the motion, giving that party the benefit of all favorable inferences which can reasonably be drawn from the record.

*Bragg v. Burlington Res. Oil & Gas Co. LP*, 2009 ND 33, ¶ 5, 763 N.W.2d 481 (quoting *Erickson v. Brown*, 2008 ND 57, ¶ 22, 747 N.W.2d 34 (citations omitted)).

### III

[¶ 5] Kraft argues the alleged oral agreement to lease equipment is enforceable and the district court erred in granting summary judgment on his counterclaim because the court made factual findings regarding the application of part performance to the requirement for a written agreement. He claims he fully performed his part of the alleged oral agreement and the agreement is enforceable without a writing under N.D.C.C. § 41–02.1–10(4)(c) (U.C.C. § 2A–201(4)(c)). Kraft asserts the "relaxed" statute of frauds for the sale of goods in N.D.C.C. § 41–02–08(3)(c) (U.C.C. § 2–201(3)(c)) uses the same "received and accepted" language as the statute of frauds for the lease of goods in N.D.C.C. § 41–02.1–10(4)(c) and should be interpreted in the same manner as the statute of frauds for the sale of goods under *Hofmann v. Stoller*, 320 N.W.2d 786 (N.D.1982). He asserts there are genuine issues of fact regarding whether Kost "received and accepted" the combining equipment under an oral lease agreement.

[¶ 6] Kost responds the rationale of the statute of frauds for the sale of goods does not apply to the lease of goods and part performance sufficient to make an oral agreement to lease goods enforceable must be consistent only with the existence of the alleged oral lease under *Buettner v. Nostdahl*, 204 N.W.2d 187 (N.D.1973) *overruled on other grounds in Shark v. Thompson*, 373 N.W.2d 859, 867–69 (N.D.1985). Kost argues the district court did not make factual findings; rather, he claims the court's decision demonstrates other explanations not consistent with an alleged oral lease.

[¶ 7] In *Buettner*, 204 N.W.2d at 192–95, this Court considered an argument about part performance and the statute of frauds as a defense in the context of Buettner's claimed oral contract to manage and work on a cattle feeding operation on the defendants' land. This Court held a mere preponderance of evidence was not sufficient to establish the terms and existence of the claimed oral contract; rather, the claimed oral contract must be established by clear and unequivocal evidence that unmistakably points to the existence of the claimed agreement instead of some other relationship. *Id.* at 195. We held the part performance in that case was not consistent only with the existence of the alleged oral contract, and we affirmed an involuntary dismissal under N.D.R.Civ.P. 41(b) of Buettner's claimed oral contract. *Buettner*, at 195.

[¶ 8] In *Hofmann*, 320 N.W.2d at 788–91, this Court considered an argument about part performance and the statute of frauds for the sale of goods in N.D.C.C. § 41–02–08 as a defense to a claimed oral contract to sell cattle feed. We recognized the Uniform Commercial Code employed a "relaxed" statute of frauds for the sale of goods and permitted enforcement of oral contracts when the goods have been "received and accepted" under N.D.C.C. §§ 41–02–08 and 41–02–69 (U.C.C. § 2–606). *Hofmann*, at 790–91. We concluded the requirement for clear and convincing evidence from *Buettner* did not apply to a claimed oral contract for the sale of goods under the Uniform Commercial Code; rather, we held the part performance exception to the statute of frauds for the sale of goods required a preponderance of evidence that goods had been received and accepted and that issue was subject to the clearly erroneous rule of N.D.R.Civ.P. 52(a). *Hofmann*, at 790–91. We also explained that receipt and acceptance need not be exclusively referable to the oral contract and conduct consistent with an oral agreement was sufficient to take a claimed oral contract out of the statute of frauds even though the conduct was not inconsistent with some other plausible arrangement between the parties. *Id.*

[¶ 9] Kraft's argument involves a claimed oral lease under N.D.C.C. ch. 41–02.1 (U.C.C. ch. 2A), which "applies to any transaction, regardless of form, that creates a lease." N.D.C.C. § 41–02.1–02 (U.C.C. § 2A–102). A lease is defined in N.D.C.C. § 41–02.1–03(1)(j) (U.C.C. § 2A–103(1)(j)) to mean "a transfer of the right to possession and use of goods for a term in return for consideration, but a sale, including a sale on approval or a sale or return, or retention or creation of a security interest is not a lease." "Goods" means "all things that are movable at the time of identification to the lease contract."

N.D.C.C. § 41–02.1–03(1)(h) (U.C.C. § 2A–103(1)(h)). A "lease contract" means "the total legal obligation that results from the lease agreement," while "lease agreement" means the "bargain, with respect to the lease, of the lessor and the lessee in fact as found in their language or by implication from other circumstances, including course of dealing or usage of trade or course of performance." N.D.C.C. § 41–02.1–03(1)(k) and (*l* ) (U.C.C. § 2A–103(1)(k) and (*l* )).

[¶ 10] Section 41–02.1–10, N.D.C.C., outlines the statute of frauds for a lease contract and provides, in part:

1. A lease contract is not enforceable by way of action or defense unless:

   a. The total payments to be made under the lease contract, excluding payments for options to renew or buy, are less than one thousand dollars; or

   b. There is a writing, signed by the party against whom enforcement is sought or by that party's authorized agent, sufficient to indicate that a lease contract has been made between the parties and to describe the goods leased and the lease term.

   . . . .

4. A lease contract that does not satisfy the requirements of subsection 1, but which is valid in other respects, is enforceable:

   . . . .

   c. With respect to goods that have been received and accepted by the lessee.

As relevant to a lease, N.D.C.C. § 41–02.1–63 (U.C.C. § 2A–515), describes the "acceptance of goods" and provides:

1. Acceptance of goods occurs after the lessee has had a reasonable opportunity to inspect the goods and:

a. The lessee signifies or acts with respect to the goods in a manner that signifies to the lessor or the supplier that the goods are conforming or that the lessee will take or retain them in spite of their nonconformity; or

b. The lessee fails to make an effective rejection of the goods (subsection 2 of section 41–02.1–57).

2. Acceptance of a part of any commercial unit is acceptance of that entire unit.

■■■ [¶ 11] "The interpretation and application of a statute is a question of law, which is fully reviewable on appeal." *B.D.H. ex rel. S.K.L. v. Mickelson*, 2010 ND 235, ¶ 4, 792 N.W.2d 169. The primary objective in interpreting a statute is to ascertain the intention of the legislation. *Amerada Hess Corp. v. State ex rel. Tax Comm'r*, 2005 ND 155, ¶ 12, 704 N.W.2d 8. Words in a statute are given their plain, ordinary, and commonly understood meaning, unless defined by statute or unless contrary intention plainly appears. N.D.C.C. § 1–02–02. Statutes are construed as a whole and are harmonized to give meaning to related provisions. N.D.C.C. § 1–02–07. If the language of a statute is clear and unambiguous, "the letter of [the statute] is not to be disregarded under the pretext of pursuing its spirit." N.D.C.C. § 1–02–05. The language of a statute must be interpreted in context and according to the rules of grammar, giving meaning and effect to every word, phrase, and sentence. N.D.C.C. §§ 1–02–03 and 1–02–38(2). We construe statutes to give effect to all of their provisions, so that no part of the statute is rendered inoperative or superfluous. N.D.C.C. § 1–02–38(2) and (4).

[¶ 12] The language pertaining to the statute of frauds for leases in N.D.C.C. § 41–02.1–10(4)(c) is identical to the language for the statute of frauds for the sale of goods in N.D.C.C. § 41–02–08(3)(c), and the official comment for N.D.C.C. § 41–02.1–10 states it "is modeled on Section 2–201, with changes to reflect the differences between a lease contract and a contract for the sale of goods." A noted commentator states that cases interpreting U.C.C. § 2–201 are equally applicable to U.C.C. § 2A–201. 4C Lary Lawrence, *Anderson on the Uniform Commercial Code* § 2A–201:3 (3d ed.2010). That commentator further explains that U.C.C. § 2A–201 should be liberally construed to expand commercial practices through custom and usage and a court's policy should be to sustain a contract whenever possible and not defeat it on technical grounds. 4C *Anderson*, at § 2A–201:6. Those comments are consistent with the plain language of the definition of "lease agreement" in N.D.C.C. § 41–02.1–03(1)(k), which contemplates consideration of course of dealing, usage of trade, or course of performance, and the language for the acceptance of leased goods in N.D.C.C. § 41–02.1–63, and when read in conjunction with the "received and accepted" language for the statute of frauds in N.D.C.C. § 41–02.1–10(4)(c), supports construing those provisions under the rationale of *Hofmann*. Although there may be some differences between sale and lease transactions, we decline Kost's invitation to construe that identical language differently. Under the rationale of *Hofmann* and the plain language of N.D.C.C. ch. 41–02.1, when read as a whole, and viewing the evidence in the light most favorable to Kraft, we conclude there are disputed issues of material fact regarding Kraft's claimed oral lease with Kost. We conclude the district court erred in granting summary judgment on Kraft's lease claim.

### IV

■■■ [¶ 13] Kraft argues the district court erred in deciding his counterclaims

could not be pursued in this action, because they "do not appear to have been properly disclosed during [his] bankruptcy proceedings."

[¶ 14] This record indicates that on June 7, 2005, Kraft and his wife filed a voluntary petition for bankruptcy as a family farmer under 11 U.S.C. § 1201 et seq. (chapter 12), and on June 28, 2007, the petition was converted to a proceeding for liquidation under 11 U.S.C. § 701 et seq. (chapter 7). According to Kraft, he was granted a general discharge in the bankruptcy case on October 30, 2007. Kraft's specific counterclaims against Kost were not listed in any of his bankruptcy schedules, and Kost initially asserted that those claims belonged to the bankruptcy estate and Kraft lacked standing to bring them in this action. This record further reflects that Kraft then purchased the bankruptcy estate's interest in the Kost–Kraft litigation, including these counterclaims, from the bankruptcy trustee for $12,000 on August 24, 2009, and Kraft received an assignment of all the bankruptcy estate's interest in the Kost–Kraft lawsuit. On September 21, 2009, the bankruptcy court approved that assignment.

[¶ 15] Kraft relies on the documentation for the assignment in 2009 and his payment of $12,000 to the trustee for the assignment of his claims involving Kost. He argues his counterclaims were administered by the bankruptcy estate and the trustee's sale of the estate's interest in the lawsuit back to him was approved by the bankruptcy court. He asserts the district court erroneously relied on *Littlefield v. Union State Bank,* 500 N.W.2d 881 (N.D. 1993) to hold he was estopped from pursuing his counterclaims. Kost responds that Kraft's failure to list the counterclaims in any of his schedules in his bankruptcy proceeding precludes Kraft from raising those counterclaims in this action under res judicata, equitable estoppel, and judicial estoppel.

[¶ 16] In *Littlefield,* 500 N.W.2d at 886, this Court held res judicata and the preclusive effect of a corporation's prior bankruptcy proceeding barred corporate shareholders from litigating a lender liability claim against a bank and its officers and a malpractice claim against the corporation's accountant. There, the corporation had filed a chapter 11 bankruptcy reorganization petition and did not list any contingent and unliquidated claims, including counterclaims, on any of its schedules filed in the bankruptcy proceeding. *Id.* at 882. The bankruptcy court confirmed the corporation's reorganization in September 1987, and the corporation's bankruptcy proceeding was closed in December 1987. *Id.* In February 1990, the corporation's shareholders sued the bank and the accountant, alleging their actions caused the corporate insolvency and the need for bankruptcy protection. *Id.* This Court cited bankruptcy requirements for a debtor to file schedules listing contingent and unliquidated claims, including counterclaims, to enable claim holders to make informed decisions about a proposed reorganization plan. *Id.* at 883. We said that other courts had universally held a debtor's failure to disclose potential claims in bankruptcy schedules operated to bar the debtor from bringing a subsequent action on those claims under principles of equitable estoppel, judicial estoppel, and res judicata. *Id.* We held the res judicata effect of the corporation's prior bankruptcy proceeding precluded the shareholders' action. *Id.* at 886.

[¶ 17] A bankruptcy case is closed under 11 U.S.C. 350(a) after the estate is fully administered and the trustee is discharged. A bankruptcy schedule may be amended as a matter of course at any time before the case is closed. Fed.R.Bank.P.

1009(a). Here, unlike *Littlefield*, this record does not establish that Kraft's bankruptcy proceeding has been closed or the bankruptcy trustee has been discharged, and the trustee, with approval by the bankruptcy court, assigned all the bankruptcy estate's interest in the Kost–Kraft litigation to Kraft for $12,000. This record indicates the trustee was still administering Kraft's bankruptcy, including the estate's interest in the Kost–Kraft litigation, and the bankruptcy court approved the trustee's assignment of the estate's interest in that litigation to Kraft. *See* 11 U.S.C. § 350 (describing bankruptcy case closing and administration, discharge of trustee after full administration, and re-opening). In this action, Kost, as the party moving for summary judgment on Kraft's counterclaims, was required to show there were no genuine issues of material fact and the counterclaims were appropriate for judgment as a matter of law. *See Bragg*, 2009 ND 33, ¶ 5, 763 N.W.2d 481. On the record provided to the district court, *Littlefield* is not controlling, and we conclude Kost has not shown as a matter of law that Kraft is precluded from pursuing his counterclaims in this action.

## V

[¶ 18]   We reverse the summary judgment and remand for proceedings consistent with this decision.

[¶ 19] GERALD W. VANDE WALLE, C.J., WICKHAM CORWIN, D.J., CAROL RONNING KAPSNER, and DANIEL J. CROTHERS, JJ., concur.

[¶ 20] The Honorable WICKHAM CORWIN, D.J., sitting in place of SANDSTROM, J., disqualified.