OMAHA PROPERTY AND CASUALTY COMPANY, Plaintiff,

v.

Dorothy CROSBY, Rick G. Butler, Maryanna Morse, individually and as parent, guardian, or guardian ad litem of Theresa Caudill, a minor, and Suzanne Lewis, individually and as parent, guardian, or guardian ad litem of Billie Jo Powers and Tabatha Winkleblack, minors, First Interstate Bank of Missoula, N.A., Defendants.

No. CV–89–9–M–CCL.

United States District Court, D. Montana, Missoula Division.

Nov. 9, 1990.

Kristine Foot, Michael J. Milodragovich, Milodragovich, Dale & Dye, Missoula, Mont., for plaintiff Omaha Property and Cas. Co.

David B. Cotner, Boone, Karlberg & Haddon, Missoula, Mont., for defendant First Interstate Bank of Missoula, N.A.

Byron Boggs, Missoula, Mont., for defendants Lewis, Powers & Winkleblack.

Darla J. Keck, Datsopoulos, MacDonald & Lind, Missoula, for defendants Crosby & Butler.

## MEMORANDUM AND ORDER

PREGERSON, Circuit Judge.[*]

Before the court are cross-motions for summary judgment. Under Fed.R.Civ.P. 56(c), summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." All parties agree that this matter is ripe for summary judgment.

## BACKGROUND

The following facts are undisputed. Plaintiff Omaha Property and Casualty Company ("Omaha") provided an insurance policy, No. A85002694, to defendant Dorothy L. Crosby. Crosby is the named insured in the policy. Before October 5, 1986, this policy covered a 1972 Plymouth 4–door automobile. Coverage of the Plymouth is not in dispute in this case. On January 13, 1987, the insurance policy was amended to add a 1984 Subaru. The 1984 Subaru was purchased by Zena Holliday and Rick G. Butler, the son of Dorothy Crosby. First Interstate Bank of Missoula ("First Interstate") held a lien on the Subaru with Butler as the borrower and Crosby as the guarantor. The title to the Subaru was later transferred from Zena Holliday and Rick Butler to Dorothy Crosby and Rick Butler.

On February 9, 1988, the Subaru was traded for a 1982 Chevrolet 4x4 pick-up truck ("Chevrolet"). Butler is the sole title holder of the Chevrolet. First Interstate purchased the seller's interest in the Retail Installment Sales Contract under which Butler agreed to purchase the Chevrolet. Crosby is neither a guarantor of that note nor a title holder in the Chevrolet. Shortly after the Chevrolet was purchased, the policy was amended to cover the Chevrolet instead of the Subaru.

From February 9, 1988, until late in March 1988, the Chevrolet was located in Montana. Crosby had possession, control, and use of the car in March 1988. In late March 1988, Butler drove the Chevrolet to

* United States Circuit Judge, Ninth Circuit, Sitting by Designation as a United States District Court Judge for the District of Montana, Missoula Division.

Alaska. In her affidavit, Crosby stated that her son Butler drove the Chevrolet to Alaska to move his belongings and that he was to return the Chevrolet to her in Montana after the move was completed. She also stated that she relied on her ability to use the Chevrolet should her other vehicle, a 1972 Plymouth, become inoperable or incapable of driving through the often "difficult Montana road conditions."

On April 19, 1988, Crosby paid the premium for the insurance policy with a check she signed from a joint account she maintained with her son, Butler. Because Butler's name was also on the check, Omaha sent a letter to Crosby to determine whether Butler was a driver in the Crosby household. In her response to Omaha's request, Crosby wrote that "Rick [Butler] does not live here. He has not lived here for at least 10 years. He visits me about 2 or 3 times a year and that is it."

On August 13, 1988, Butler, while driving the Chevrolet, was involved in an accident on the Kenai Spur Highway in Alaska. Occupants in the other vehicle involved in the accident were Maryanna Morse, Theresa Caudill, Suzanne Lewis, Billie Jo Powers, and Tabatha Winkleblack.[1] Those occupants have alleged serious injuries as a result of the accident. The Chevrolet pickup truck was a total loss.

On October 3, 1988, Omaha gave notice to Crosby that it would not renew policy No. A85002694 and that the policy would expire on November 1, 1988. On that same date, Omaha gave notice to First Interstate that the Loss Payable Clause of the policy would expire on November 1, 1988. As of September 6, 1990, Omaha had not returned any of the premium paid by Crosby.[2]

On January 17, 1989, Omaha filed this action for a declaratory judgment to determine the relative rights of the parties and duties owed by Omaha to the various defendants. In its complaint, Omaha asks this court to find that it (1) has no obligation to Crosby or Butler under the policy and (2) owes no duty of payment to the Injured Parties or to First Interstate. Defendant First Interstate made a claim against policy No. A85002694, including a claim under the Loss Payable Clause for payment of the unpaid portion of the Butler note for the purchase of the Chevrolet. Omaha filed a motion for summary judgment, and Crosby, Butler, First Interstate, and the Injured Parties filed cross-motions for summary judgment.

## DISCUSSION

In its Motion for Summary Judgment and its supporting briefs, Omaha argues that its insurance policy with Crosby is unenforceable because she does not have an "insurable interest" in the Chevrolet. Omaha also contends that it is entitled to rescind the policy because of Crosby's misrepresentations regarding her ownership of the Chevrolet. These issues are ripe for summary judgment.

### I. *Choice of Law*

■ Before reaching the merits of this matter, this court must first determine which state law applies—Montana law or Alaska law. The insurance contract was executed in Montana, but the accident took place in Alaska. Federal courts exercising diversity jurisdiction apply the substantive law, including choice of law, of the state in which it is sitting. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). As a federal district court in Montana, this court applies the Montana choice of law rules.

Section 28–3–102 of the Montana Code Annotated provides:

1. Maryanna Morse and Theresa Caudill are not involved in this action. Suzanne Lewis, Billie Jo Powers, and Tabatha Winkleblack are referred to collectively in this order as the "Injured Parties."

2. In an affidavit dated September 6, 1990, John Pereira, a claims examiner for Omaha, stated

that he ordered Omaha's check writing department to issue a check for $124.00 to Dorothy Crosby for the total premium paid by Crosby on the Chevrolet for the six-month period ending on 11/1/88. He stated that he expects the check to be issued by September 14, 1990.

A contract is to be interpreted according to the law and usage of the place where it is to be performed or, if it does not indicate a place of performance, according to the law and usage of the place where it is made.

In *Kemp v. Allstate Insurance Co.*, 183 Mont. 526, 601 P.2d 20 (1979), the Montana Supreme Court stated that this statute is consistent with the longstanding rule that

the law of place of performance of an insurance contract controls as to its legal construction and effect, but the *law of the place where the contract was made governs on questions of execution and validity,* unless the terms of the contract provide otherwise, or circumstances indicate a different intention.

*Id.* 601 P.2d at 24 (emphasis added). In this case, the primary dispute involves a question of the validity of the insurance policy, i.e., whether the insured had an insurable interest so as to make the policy enforceable. Because the policy is silent on this question and the parties do not argue that they intended the law of a specific jurisdiction to apply, the place where the contract was made determines whether the contract is valid under *Kemp.* This court therefore will apply Montana law in determining whether the insurance policy is enforceable.

II. *Insurable Interest*

■ Omaha argues that the insurance policy is unenforceable because Crosby lacks an "insurable interest" in the Chevrolet. Omaha contends that any policy lacking an insurable interest is unenforceable under the Montana Code which provides:

(1) No contract of insurance of property or of any interest in property or arising from property shall be enforceable as to the insurance except for the benefit of persons having an insurable interest in the things insured as at the time of the loss.

(2) "Insurable interest" as used in this section means *any actual, lawful, and substantial economic interest in the*

*safety or preservation of the subject* of the insurance free from loss, destruction, or pecuniary damage or impairment.

(3) The measure of an insurable interest in property is the extent to which the insured might be damnified by loss, injury, or impairment.

Mont.Code Ann. § 33–15–205 (1989) (emphasis added).

Omaha contends that Crosby lacks an insurable interest in the Chevrolet because she did not have "an actual, lawful, and substantial economic interest" in the preservation of the Chevrolet as required by subsection (2) of this statute. The Montana definition of insurable interest does not require that a person be the owner of a vehicle to have "an actual, lawful, and substantial economic interest" in the vehicle. Here several undisputed facts convince this court that Crosby had "an actual, lawful, and substantial economic interest" in the Chevrolet. First, Crosby gave value towards the purchase of the Chevrolet when she and her son, Butler, traded the Subaru for the Chevrolet. Second, Crosby paid the premium on the insurance policy with a check from an account held jointly by Crosby and her son. Third, Crosby had possession, use, and control of the Chevrolet in March, 1988. *Cf. Farmers Butter & Dairy Coop. v. Farm Bureau Mut. Ins. Co.,* 196 N.W.2d 533, 537 (Iowa 1972) (an insurable interest exists when a person "possesses a qualified property or possessory right in the subject of the insurance, such as that of a bailee"). Finally, Crosby intended to use the Chevrolet as a back-up to her old Plymouth in the cold Montana Winter months. Insurable interest should be broadly construed in situations like this where there is no indication that the policy was not obtained in good faith. I find that, under the broad definition of insurable interest in Montana, Crosby had an insurable interest in the Chevrolet.[3]

■ In this case, this court also must consider the requirement of insurable inter-

---

**3.** Because this court holds that Crosby had an insurable interest in the Chevrolet, it is unnecessary to decide whether First Interstate is enti-

tled to collect under the Loss Payable Clause of the policy for payment of the unpaid portion of the Butler note.

**1384**

est in connection with the *liability* provisions of the policy as well as under the provisions covering property loss.[4] The Montana statute requiring insurable interest applies only to "contract[s] of insurance of *property* or of any interest in *property* or arising from *property*." Mont.Code Ann. § 33–15–205(1) (emphasis added). The language of the statute does not apply to contracts of *liability* insurance. *See DiGerolamo v. Liberty Mut. Ins. Co.*, 364 So.2d 939, 941–42 (La.1978) (reaching the same conclusion in interpreting a statute with substantially the same language).

The Montana Supreme Court has not addressed the issue whether an insurable interest is required to enforce contracts of liability insurance. The reason behind requiring an insurable interest in contracts of property insurance—to prevent wagering in the guise of insurance and the temptation to destroy the insured property—does not apply in contracts of automobile liability insurance. Many courts that have considered this question have not required an insurable interest in the traditional property sense, but only that the insured may incur liability because of the operation or use of the vehicle. *See e.g., id.* at 941–42; *Western Casualty & Surety Co. v. Herman*, 318 F.2d 50 (8th Cir.1963); *Farmers Butter & Dairy Coop. v. Farm Bureau Mut. Ins. Co.*, 196 N.W.2d 533 (Iowa 1972). I believe this is the rule that the courts of Montana would follow if faced with this question.

Under this definition, Crosby had an insurable interest. Until her son Butler drove the Chevrolet to Alaska in late March 1988, the car was in her possession and available for her use. Although not the owner of the vehicle, she may have incurred liability by using the Chevrolet herself. In fact, under Mont.Code Ann. § 61–6–304, Crosby would have been criminally liable if she operated the Chevrolet in Montana without liability insurance. The insurance policy therefore is not unenforceable for lack of an insurable interest.

### III. *Montana's Mandatory Liability Protection Act*

■ Even if Crosby lacked an insurable interest, however, the insurance policy would still be enforceable *by an injured third party* because of Montana's Mandatory Liability Protection Act. Mont.Code Ann. §§ 61–6–301–61–6–304. Under the Act, "it is unlawful for any person to operate a motor vehicle ... [in Montana] without a valid policy of liability insurance...." Mont.Code Ann. § 61–6–304. The purpose of compulsory insurance laws, like the Montana law, is to ensure that, to the extent possible, all victims of motor vehicle accidents receive compensation for their injuries. *See, e.g. Farmers Ins. Exch. v. Rose*, 411 F.2d 270, 273 (9th Cir.1969) ("the [Arizona] Financial Responsibility Act has for its primary purpose the protection of the public ... from financial hardship"); *Richard v. Fliflet*, 370 N.W.2d 528, 534 (N.D.1985) ("[t]he overriding purpose of our financial responsibility laws is to protect innocent victims of motor vehicle accidents from financial disaster").

When a state compulsory insurance statute exists, courts have "universally held or recognized that an insurer cannot, on the ground of fraud or misrepresentations relating to the inception of the policy, retrospectively avoid coverage ... so as to escape liability to a third party." 7 Am. Jur.2d § 37 (1980). If a compulsory insurance law bars an insurer from avoiding liability to an injured third party after an accident on the basis of fraud relating to the inception of the policy, it should also bar an insurer from avoiding coverage because the insured lacked an insurable interest. *Cf. Farmers Ins. Exch. v. Rose*, 411 F.2d 270, 272 (9th Cir.1969) (noting that the Arizona Financial Responsibility Act bars the insurer from raising a number of defenses, besides fraud, after an accident occurs). The insurable interest requirement for automobile liability insurance does not override the important remedial policy behind the Montana Mandatory Liability Pro-

**4.** First Interstate claims the proceeds of the policy under the property loss section of the policy to the extent of its lien on the Chevrolet. In addition, Omaha may be liable to the Injured Parties under the liability provisions of the policy.

tection Act. Thus, an insurer cannot avoid automobile liability coverage in an action involving an injured third party after an accident occurs on the ground that the insured lacked an insurable interest.[5]

Omaha argues that notwithstanding the general rule, *McLane v. Farmers Insurance Exchange*, 150 Mont. 116, 432 P.2d 98 (1967) requires a different result. Omaha reads *McLane* as giving an insurer the right to rescind an insurance contract even after an accident occurs. This court does not read *McLane* so broadly. In *McLane*, the Montana Supreme Court held that the insurer waived its right to rescind the insurance policy because, after it became aware of the grounds for rescission, the insurer continued to act in a manner inconsistent with an election to rescind. Specifically, in *McLane* the insurer "accepted premium payments and paid other claims arising from the same accident." *Id.* 432 P.2d at 99. But the court left open the possibility that the injured party's rights "vested ... at the time of the accident." *Id.* 432 P.2d at 100. Furthermore, Montana's Mandatory Protection Act was not enacted until 1979,[6] 12 years after *McLane* was decided. *McLane* therefore did not address the issue raised here.

In short, Omaha's argument that its insurance policy is unenforceable for lack of an insurable interest is wrong for two reasons. First, an insurable interest exists with respect to both the property loss and liability portions of the policy. Second, even if Crosby did not have an insurable interest, the liability portion of the plan would be enforceable because of the existence of Montana's Mandatory Liability Protection Act.[7]

## CONCLUSION

Accordingly, it is hereby ordered that Plaintiff Omaha's motion for summary judgment is DENIED. It is further ordered that Defendants' motions for summary judgment are GRANTED.

All motions for attorneys' fees filed by the defendants are DENIED.

---

**5.** Alaska, as well as Montana, requires compulsory vehicle liability insurance. Alaska Stat. § 28.22.011 (1989). Thus, although this court assumes that Montana law would apply to this issue, the same result is reached under Alaska law.

**6.** From 1951 to 1979, Montana required only that drivers who had their licenses revoked must obtain proof of financial responsibility to have their licenses reinstated. *See* Mont.Code Ann. § 61–6–131 (1989).

**7.** Omaha also argues that it has a right to rescind the insurance policy based on Crosby's misrepresentations relating to her ownership of the Chevrolet. This argument adds nothing to this case. Because this court finds that the policy is not unenforceable for lack of an insurable interest, Omaha has no right to rescind based on Crosby's alleged misrepresentations concerning her ownership of the vehicle. On the other hand, if this court had found that the policy was unenforceable for lack of an insurable interest, the policy would be unenforceable on public policy grounds regardless of whether Omaha had a right to rescind the policy on the ground of fraud. Moreover, Omaha presented no evidence that Crosby made any intentional misrepresentations.