2009 ND 166

**Michael KAMBEITZ and Denise Ann Dockter–Kambeitz, Plaintiffs and Appellants**

v.

**ACUITY INSURANCE COMPANY, Defendant and Appellee.**

No. 20090059.

Supreme Court of North Dakota.

Sept. 16, 2009.

ny. Because fraud or misrepresentation which would relieve an insurer of liability under its insurance policy with the insured does not relieve the insurer of liability to an injured innocent third party whose protection is mandated under North Dakota law, and because there exist genuine issues of material fact whether there was fraud or misrepresentation by the insured and whether Michael Kambeitz is an innocent third party under the circumstances, we conclude the district court erred in granting Acuity's motion for summary judgment. We reverse and remand for further proceedings.

I

[¶ 2] On March 12, 2004, Michael Kambeitz was driving a 2001 Dodge Ram truck in Bismarck when the truck was rear-ended by another vehicle. Kambeitz was injured and received $25,000, the liability carrier's insurance limit, from the at-fault driver's insurance company. Kambeitz and his wife, Dockter–Kambeitz, then sought UIM benefits from Acuity, the insurer of the truck.

[¶ 3] The 2001 Dodge Ram truck involved in the accident was owned by Kambeitz's father, Thomas Kambeitz. Thomas Kambeitz is an owner of two Bismarck businesses: Bismarck Heating and Air, Inc. ("Bismarck Heating and Air"), and Newvision, LLC, which is operated under the trade name "New Vision Security Systems." New Vision was opened in 1996 or 1997, and Michael Kambeitz is its primary employee. The 2001 Dodge Ram truck is also the primary vehicle used for New Vision business.

[¶ 4] The 2001 Dodge Ram truck was one of seventeen vehicles insured under a commercial auto insurance policy issued by Acuity to Bismarck Heating and Air. The truck was specifically listed as a covered auto under the policy, and Michael Kam-

Rodney E. Pagel, Pagel Weikum Law Firm, Bismarck, N.D., for plaintiffs and appellants.

Randall J. Bakke (argued) and Shawn A. Grinolds (on brief), Smith Bakke Porsborg & Schweigert, Bismarck, N.D., for defendant and appellee.

MARING, Justice.

[¶ 1] Michael Kambeitz and Denise Ann Dockter–Kambeitz appeal from an order granting summary judgment dismissal of their claim for payment of benefits under the underinsured motorist ("UIM") provisions of a commercial auto insurance policy issued by Acuity Insurance Compa-

beitz was listed on Bismarck Heating and Air's schedule of drivers in the policy, along with seventeen other owners and employees of Bismarck Heating and Air. At the time of the accident, the truck was being used by Michael Kambeitz while he conducted business on behalf of New Vision. According to Michael Kambeitz, the truck was used "primarily" by New Vision, but the truck "has also been used to the benefit of [Bismarck Heating and Air] in the performance of work," because he would "occasionally run errands, pick up parts, haul parts, supplies, etc. for [Bismarck Heating and Air]."

[¶ 5] Acuity denied Kambeitz's claim, and Kambeitz and Dockter–Kambeitz brought this lawsuit to collect UIM benefits under the insurance policy issued to Bismarck Heating and Air. Shortly before the scheduled trial, Acuity moved for summary judgment dismissal of the lawsuit. Acuity argued the insurance policy "was procured by material misrepresentations of fact, fraud and/or concealment perpetrated by a named insured with the knowledge and collusion of plaintiffs," and that the "collusion constitutes a complete defense to plaintiff's claims." Affidavits from Thomas Kambeitz and Michael Kambeitz denying any fraud, misrepresentations, or collusion were submitted in response to the motion.

[¶ 6] In granting the summary judgment motion, the district court reasoned:

While Kambeitz claims the facts are in dispute, the Court finds he has not set forth a "genuine material issue of fact precluding summary judgment." Kambeitz states that Thomas Kambeitz is the owner of Bismarck Heating & Air, Inc., the entity insured by Acuity. Kambeitz also states that Thomas Kambeitz is the owner of New Vision, LLC (New Vision), and that at the time of the accident Kambeitz was employed by New Vision and using his father's vehicle in that capacity. Kambeitz asserts the Dodge Ram was listed on the policy issued by Acuity to BHAC, and that Thomas Kambeitz advised Acuity that Kambeitz would be a driver of the vehicle.

Acuity asserts this policy issued to BHAC was "procured by material misrepresentations of fact, fraud and/or concealment perpetrated by a named insured with the knowledge and collusion of the plaintiffs." While Thomas Kambeitz says he advised Acuity the Dodge Ram would be driven by Kambeitz and that he, Thomas Kambeitz, owned the Dodge Ram, he did not state that it would be primarily used by a business other than BHAC. Thomas Kambeitz does not claim New Vision is an additional business covered under the Acuity policy.

There is no genuine material issue of fact. The Dodge Ram was the business vehicle used by New Vision. There is but a minor connection with the Dodge Ram to the business of BHAC as Thomas Kambeitz states it was used to run parts. On these facts the Court finds misrepresentation to Acuity on the use of the Dodge Ram by another business entity not insured by Acuity.

The court dismissed the action, and Kambeitz and Dockter–Kambeitz (collectively "Kambeitz") appealed.

II

[¶ 7] Kambeitz contends the district court erred in granting summary judgment dismissal of the claim against Acuity.

[¶ 8] The standard for reviewing a summary judgment is well established:

Under N.D.R.Civ.P. 56, summary judgment is a procedural device for promptly resolving a controversy on the

merits without a trial if there are no genuine issues of material fact or inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law. The party moving for summary judgment must show there are no genuine issues of material fact and the case is appropriate for judgment as a matter of law. A district court's decision on a motion for summary judgment is a question of law that we review de novo on the record. In determining whether summary judgment was appropriately granted, we view the evidence in the light most favorable to the party opposing the motion, giving that party the benefit of all favorable inferences which can reasonably be drawn from the record.

*Bragg v. Burlington Res. Oil and Gas Co. LP*, 2009 ND 33, ¶ 5, 763 N.W.2d 481 (quoting *Erickson v. Brown*, 2008 ND 57, ¶ 22, 747 N.W.2d 34 (citations omitted)).

### A

[¶ 9] Kambeitz argues the district court erred in granting the motion for summary judgment because Acuity failed to plead in its answer the affirmative defense that there is no coverage under the policy based on the alleged misrepresentations, fraud, concealment, and collusion. *See generally Zuraff v. Empire Fire and Marine Ins. Co.*, 252 N.W.2d 302, 303 (N.D.1977) (treating as affirmative defense allegation that "policy was null and void by reason of Zuraff's fraud and misrepresentation").

[¶ 10] Although the failure to plead an affirmative defense under N.D.R.Civ.P. 8(c) generally results in waiver of the defense, amendments to the pleadings under N.D.R.Civ.P. 15(a) are to be freely given when justice so requires. *Hansen v. First Am. Bank & Trust*, 452 N.W.2d 770, 771–72 (N.D.1990). In *Leet v. City of Minot*, 2006 ND 191, ¶¶ 3–4, 721 N.W.2d 398, the plaintiffs sued the City for negligence and the City, shortly before the scheduled trial, raised an affirmative defense based on the recreational use immunity statutes for the first time in a motion for summary judgment. The plaintiffs contended, in the district court and this Court, that the City was precluded from asserting the recreational use immunity defense for the first time in the motion for summary judgment. *Id.* at ¶ 4. This Court concluded an affirmative defense may be asserted for the first time in a motion for summary judgment "where there is no prejudice or surprise to the nonmoving party." *Id.* at ¶ 8. The district court had granted the motion for summary judgment on the ground of recreational use immunity, and we interpreted the court's actions as "effectively grant[ing] a motion to amend by permitting the defense to be raised." *Id.* Because the plaintiffs had not alleged any prejudice, had not sought a continuance, and no prejudice was apparent from the record, we concluded the district court did not abuse its discretion in permitting the City to raise the affirmative defense for the first time in its motion for summary judgment. *Id.* at ¶¶ 8, 10.

[¶ 11] Here, Kambeitz argued to the district court that Acuity should not be permitted to raise the affirmative defense because it was not contained in its answer. Although the district court did not address this argument in its decision, the court granted the summary judgment motion on the ground raised by the affirmative defense. As in *Leet*, 2006 ND 191, ¶ 8, 721 N.W.2d 398, the district court "effectively granted a motion to amend by permitting the defense to be raised." A district court's decision on a motion to amend a pleading will not be overruled on appeal unless the court has abused its

discretion. *Id.* at ¶ 7. A district court abuses its discretion when it acts arbitrarily, unconscionably, or unreasonably, when its decision is not the product of a rational mental process leading to a reasoned determination, or when it misinterprets or misapplies the law. *Id.*

[¶ 12] Kambeitz did not allege in the district court or in this Court any prejudice or unfair surprise from Acuity's failure to specifically raise the affirmative defense until its motion for summary judgment, and there is no prejudice apparent from the record. We conclude the district court did not abuse its discretion in allowing the affirmative defense to be raised in this case.

B

[¶ 13] Kambeitz contends the district court erred in granting Acuity's summary judgment motion because the insurance policy was not procured by material misrepresentations of fact, fraud, or concealment by the named insured, Thomas Kambeitz, and because Kambeitz did not collude in any alleged misrepresentations, fraud, or concealment.

[¶ 14] In *Richard v. Fliflet*, 370 N.W.2d 528, 535 (N.D.1985), a majority of this Court held that N.D.C.C. § 39–16.1–11(6)(a), which prohibits cancellation or annulment of an insurance policy after an accident, was incorporated into policies purchased to avoid the sanctions of N.D.C.C. § 39–16–05 of the financial responsibility laws. In *Fliflet*, at 529, the defendant was driving his brother-in-law's vehicle, which was insured under a policy issued to another person, when it was involved in an accident with the plaintiff. The insurance company that had insured the vehicle sought to rescind the policy because of the insured's misrepresentation or concealment of the actual ownership of the vehicle in obtaining the policy. *Id.* at

530. The majority of the Court relied upon *Shockley v. Sallows*, 615 F.2d 233 (5th Cir.1980), in which the Fifth Circuit Court of Appeals had applied North Dakota law in a similar situation. *Fliflet*, at 534. The majority of this Court explained:

The [*Shockley*] court interpreted our decision in *Hughes [v. State Farm Mut. Auto. Ins. Co.*, 236 N.W.2d 870 (N.D. 1975),] to stand for the proposition that all automobile liability contracts in North Dakota, whether or not certified, are controlled by the Financial Responsibility Act, provided the policies purchased voluntarily afford substantially the same coverage as policies issued in conformity with the mandatory requirements of Chapter 39–16.1, N.D.C.C. *Shockley, supra*, 615 F.2d at 237. The Shockley court concluded:

"[T]he public policy of North Dakota as there enunciated by its Supreme Court, and the broad construction placed upon its financial responsibility laws, convinces us that the courts of North Dakota would hold that the company's liability to Sallows under the policy became absolute upon the occurrence of the accident which resulted in the death of Mrs. Shockley, notwithstanding the company's subsequent discovery of Sallows' misrepresentation of a material fact in applying for the policy. The policy in the instant case is governed by the financial responsibility laws of North Dakota and cannot be voided after the accident occurred." *Shockley, supra*, 615 F.2d at 237.

. . . .

The overriding purpose of our financial responsibility laws is to protect innocent victims of motor vehicle accidents from financial disaster. This principle coincides with the concept of protecting innocent victims who are not in the posi-

tion enjoyed by the contracting insurer to protect themselves against fraud or misrepresentation by the insured.

We believe it would defeat the basic purpose of our financial responsibility laws if a policy with minimum limits and omnibus coverage is required by our laws for *all* motor vehicle liability policies, but that policy could be rescinded after an accident if it were purchased to avoid the sanctions of Section 39–16–05, N.D.C.C. We do not believe that result would afford "substantially the same" coverage required by Chapter 39–16.1, N.D.C.C., as that phrase is used in Section 39–16–05, N.D.C.C. If rescission were permitted after an accident, an innocent victim could suffer financial hardship. We do not believe the Legislature contemplated that result. Rather, the strong public policy of protecting innocent victims of motor vehicle accidents and our decision in *Hughes, supra*, leads us to conclude that Section 39–16.1–11(6)(a), N.D.C.C., is applicable to motor vehicle liability policies purchased to avoid the sanctions of Section 39–16–05, N.D.C.C.

*Fliflet*, at 534–35. The majority of this Court also held that, because N.D.C.C. § 39–16.1–11(6) is a specific provision relating to motor vehicle liability policies, it prevailed over the statutory provisions generally applicable to insurance contracts currently codified in N.D.C.C. ch. 26.1–29. *Fliflet*, at 535.

■ [¶ 15] Stripped of its legal verbiage, the *Fliflet* majority's opinion essentially holds that an insurance company cannot avoid coverage under any compulsory automobile liability insurance policy provisions after an accident when a claim against the policy is made by an injured innocent third party. *See generally* Melanie Kopperud, Case Comment, 62 N.D. L.Rev. 407, 420 (1986). *Fliflet*

is consistent with the view of courts in other jurisdictions which prevent, based either on specific statutory provisions or the overriding purpose of statutory schemes governing compulsory automobile liability insurance, post-loss avoidance of an insurance policy to defeat the insurer's liability to an innocent third party. *See, e.g., American Centennial Ins. Co. v. Sinkler*, 903 F.Supp. 408, 415 (E.D.N.Y.1995) (noting "post-loss rescission is incompatible with protections enacted to guaranty compensation to innocent accident victims");

*Omaha Prop. and Cas. Co. v. Crosby*, 756 F.Supp. 1380, 1384 (D.Mont.1990) ("When a state compulsory insurance statute exists, courts have 'universally held or recognized that an insurer cannot, on the ground of fraud or misrepresentations relating to the inception of the policy, retrospectively avoid coverage ... so as to escape liability to a third party.' " (citation omitted)); *Douglass v. Nationwide Mut. Ins. Co.*, 323 Ark. 105, 913 S.W.2d 277, 282 (1996) ("While we uphold the right of an insurance company to rescind coverages based on fraud by the insured ..., we underscore the point that this right is unavailable when third-party claims are at issue."); *Pearce v. Southern Guar. Ins. Co.*, 246 Ga. 33, 268 S.E.2d 623, 628 (1980) ("an automobile insurance policy providing basic third party liability insurance and basic personal injury protection benefits (no-fault) issued pursuant to Georgia law cannot be voided retrospectively"); *Dunn v. Safeco Ins. Co. of Am.*, 14 Kan.App.2d 732, 798 P.2d 955, 958 (1990) ("all courts that have considered the question as it pertains to an innocent third party have held that an insurer cannot, on the ground of fraud or misrepresentation, retrospectively avoid coverage under a compulsory insurance or financial responsibility law so as to escape liability to an innocent third party"); *Van Horn v. Atlantic Mut. Ins.*

*Co.,* 334 Md. 669, 641 A.2d 195, 199–200 (1994) ("we hold that an insurer's common law right to void *ab initio* an automobile insurance policy, when the applicant had made a material misrepresentation in the application for the policy, has been statutorily abrogated with regard to claims of persons not involved in making the misrepresentation"); *United Sec. Ins. Co. v. Commissioner of Ins.,* 133 Mich.App. 38, 348 N.W.2d 34, 36 (1984) ("the liability of an insurer with respect to insurance becomes absolute whenever injury covered by the policy occurs and . . . no statement made by or on behalf of the insured or violation of the policy may be used to avoid liability [when innocent third parties are involved]"); *Mooney v. Nationwide Mut. Ins. Co.,* 149 N.H. 355, 822 A.2d 567, 570 (2003) ("courts have uniformly held that an insurer cannot avoid coverage under a compulsory insurance or financial responsibility law because of fraud when the claimant is an innocent third party"); *Teeter v. Allstate Ins. Co.,* 9 A.D.2d 176, 192 N.Y.S.2d 610, 615 (1959), *aff'd,* 9 N.Y.2d 655, 212 N.Y.S.2d 71, 173 N.E.2d 47 (1961) ("It is impossible to reconcile the existence of a right to rescind *ab initio* with the general scheme of the compulsory insurance law."); *Harkrider v. Posey,* 24 P.3d 821, 828 (Okla.2000) ("a misrepresentation which would relieve an insurer of liability to its insured . . . does not relieve the insurer of liability to an innocent third party whose protection is mandated by Oklahoma's compulsory insurance law"); Annot., *Rescission or avoidance, for fraud or misrepresentation, of compulsory, financial responsibility, or assigned risk automobile insurance,* 83 A.L.R.2d 1104 (1962), and cases collected therein.

[¶ 16] We emphasize that the *Fliflet* principles apply only when an innocent third party is involved, because "in a case where there is no innocent third party involved and the dispute is only between

the insurer and its insured, no compelling public policy reasons exist for holding that the insurance company has lost the right of rescission." *Dunn,* 798 P.2d at 959; *see also United Sec. Ins. Co.,* 348 N.W.2d at 36; *Mooney,* 822 A.2d at 570–71.

[¶ 17] Kambeitz argues he is entitled to prevail as a matter of law because Acuity has no right to retroactively avoid liability under the policy, but can only cancel the policy under N.D.C.C. § 26.1–40–02(1)(c). Whether N.D.C.C. § 26.1–40–02 applies and whether Acuity complied with the notice provisions of N.D.C.C. § 26.1–40–03, does not matter under the facts of this case, because numerous courts have held that insurance companies can avoid coverage under some circumstances without following the statutory cancellation statutes and their notice requirements, at least where the claimants are not innocent third parties. *See, e.g., Bennett v. Hedglin,* 995 P.2d 668, 673–74 (Alaska 2000); *Douglass,* 913 S.W.2d at 281 (declaratory judgment action also unnecessary); *Dunn,* 798 P.2d at 957–60; *United Sec. Ins. Co.,* 348 N.W.2d at 35–36; *Glockel v. State Farm Mut. Auto. Ins. Co.,* 224 Neb. 598, 400 N.W.2d 250, 255–57 (1987). The court in *Bennett,* 995 P.2d at 673–74, reasoned:

Notice-of-cancellation provisions are designed to protect the insured by providing time to obtain insurance elsewhere before the cancellation becomes effective and the insured is exposed to risk without protection. If the insured procured the policy by fraud or material misrepresentation, he should not benefit from this protection by recovering on personal claims. Thus, we hold that the insurer may rescind the binder or policy—rendering the contract void *ab initio*—when the applicant makes a misrepresentation material to the risk.

(Footnotes omitted.)

[¶ 18] Compulsory underinsured motorist coverage was enacted by the Legis-

lature in 1987. *See Thompson v. Nodak Mut. Ins. Co.*, 466 N.W.2d 115, 116 (N.D. 1991); N.D.C.C. § 26.1–40–15.3. "Uninsured motorist coverage is essentially a function of statute just like underinsured motorist coverage." *Sandberg v. American Family Ins. Co.*, 2006 ND 198, ¶ 8, 722 N.W.2d 359; *see also Score v. American Family Mut. Ins. Co.*, 538 N.W.2d 206, 210 (N.D.1995); *Gabriel v. Minnesota Mut. Fire and Cas.*, 506 N.W.2d 73, 75–76 (N.D. 1993). Consequently, the principles enunciated in *Fliflet* apply in this case. Assuming Thomas Kambeitz committed fraud or made material misrepresentations in obtaining the policy, Acuity cannot avoid any potential liability to Kambeitz under the Bismarck Heating and Air policy if Kambeitz was an injured innocent third party.

### C

[¶ 19] Kambeitz argues the district court erred in granting summary judgment on Acuity's allegations of misrepresentation, fraud, concealment, and collusion.

[¶ 20] Fraud, intentional and material misrepresentation, concealment, and collusion are all generally questions of fact for the trier of fact. *See WFND, LLC v. Fargo Marc, LLC*, 2007 ND 67, ¶ 25, 730 N.W.2d 841; *Higgins v. Trauger*, 2001 ND 149, ¶ 24, 632 N.W.2d 463. Although "issues of fact may become issues of law if reasonable persons could reach only one conclusion from the facts," *Fast v. State*, 2004 ND 111, ¶ 7, 680 N.W.2d 265, reasonable persons could reach more than one conclusion from the factual allegations made in this case.

[¶ 21] Acuity relies on evidence indicating that Thomas and Michael Kambeitz both knew the 2001 Dodge Ram truck was being used primarily by Michael Kambeitz in furtherance of the business interests of New Vision and knew Michael Kambeitz was not an employee of Bismarck Heating and Air and instead worked full-time for New Vision. Acuity also argues neither Thomas nor Michael Kambeitz ever advised it that the truck would be used by New Vision and its employees rather than by Bismarck Heating and Air and its employees.

[¶ 22] Both Michael and Thomas Kambeitz admitted in affidavits the truck had been used "primarily" by New Vision, but also claimed the truck had "been used to the benefit of [Bismarck Heating and Air] in the performance of work." Michael Kambeitz stated in his affidavit:

> The Dodge truck has in fact both been utilized by myself on various occasions and has been utilized by Tom for purposes of promoting BH & A, Inc. business in the pick up and delivery of parts, etc. for the business.... Acuity makes the statement that "Plaintiffs were also fully aware said insurance coverage was being obtained and maintained based upon false pretenses and should not be allowed to profit from their collusion with T. Kambeitz." ... Tom and I did not collude to get coverage and we did not conspire to get coverage falsely on the vehicles. Tom was in fact the one in charge of coverage. I had nothing to do with this.

> At no point have I ever tried to conceal, defraud or misrepresent anything concerning the use or ownership of the Dodge vehicle to Acuity.

> At no point was there any effort on the part of Tom or myself to hide, conceal or misrepresent in any fashion that the subject Dodge vehicle was not owned by BH & A, Inc., but was owned and titled in Tom's name, that Tom was seeking coverage under the BH & A, Inc. policy with Acuity for this vehicle, and that I was an anticipated and scheduled driver

of the various vehicles identified as covered vehicles under the policy.

Thomas Kambeitz claimed in his affidavit:

Acuity apparently makes the statement that the Dodge Vehicle was being used exclusively by New Vision and that "[n]either T. Kambeitz, anyone else from BHAC, nor plaintiffs advised Acuity M. Kambeitz would be the principal driver of the subject vehicle or that it would be used by New Vision." ... The fact is that I advised Acuity that Mike Kambeitz would be a driver of the vehicles covered by the policy, that the Dodge vehicle was titled under my name and that I was seeking coverage for the Dodge under the BH & A, Inc. policy. I had no knowledge Acuity wanted me to advise them which of my employees would be the "principal driver" of each of the vehicles identified in the policy and for which I obtained coverage, and I don't think I could have done this had they wanted it since various drivers use various vehicles.... Acuity apparently makes the statement that "Plaintiffs were also fully aware said insurance coverage was being obtained and maintained based upon false pretenses and should not be allowed to profit from their collusion with T. Kambeitz." ... Mike and I did not collude to get coverage and did not conspire to get coverage falsely on the vehicles. I was in fact the one in charge of coverages.

At no point have I ever tried to conceal, defraud or misrepresent anything concerning the use or ownership of the Dodge vehicle to Acuity. In fact I have tried to do the opposite to ensure that all of my vehicles were adequately covered by insurance. I fully disclosed that I, and not BH & A, Inc. was the owner of the 2001 Dodge vehicle and that I desired to have coverage on the vehi-cle.... I specifically requested on May 2, 2002, nearly two years before this accident, that the subject vehicle be covered under the policy with BH & A, Inc. Furthermore, ... not only did I request coverage on the Dodge vehicle, but the "Additional changes/remarks" made it crystal clear that I was seeking to clarify that I was to be included as the Titleholder on the 2001 Dodge pickup which was involved in this accident. It is astounding to me that Acuity would say that this vehicle is not covered under the policy.

[¶ 23] We conclude there are genuine issues of material fact whether Thomas Kambeitz committed fraud or made material misrepresentations or concealments in obtaining the insurance policy covering the 2001 Dodge Ram truck, and whether Michael Kambeitz acted in collusion with Thomas Kambeitz's alleged wrongful actions. If Michael Kambeitz is found to be an "innocent" third party, Acuity cannot rescind its policy under *Fliflet*. The district court erred in granting summary judgment dismissal of Kambeitz's action against Acuity.

### III

[¶ 24] We reverse the order and remand for further proceedings.

[¶ 25] MARY MUEHLEN MARING, CAROL RONNING KAPSNER, and DALE V. SANDSTROM, JJ., concur.

DANIEL J. CROTHERS, J., I concur in the result.

VANDE WALLE, Chief Justice, concurring in the result.

[¶ 26] I dissented in *Richard v. Fliflet*, 370 N.W.2d 528 (N.D.1985). *Id.* at 536. *Fliflet* relied upon this Court's decision in *Hughes v. State Farm Mut. Auto. Ins. Co.*, 236 N.W.2d 870 (N.D.1975). Notwith-

standing the dissents in each of those cases, the Legislature has not amended the applicable statutes and the majority opinion in those cases announce the law in this State. I therefore agree that this case must be remanded to determine the factual issues outlined in the opinion of the Court. If the factual issues result in a finding of fraud, material misrepresentation and concealment, the determination of whether a claimant is an innocent party may be more difficult when that party is also a family member. Nevertheless, under the current state of the law there is no difference between a family member and a total stranger insofar as the coverage under the underinsured policy is concerned, nor is there any legal difference in determining whether or not a claimant is an innocent party.

[¶ 27] I concur in the result reached by the majority opinion.

[¶ 28] Gerald W. VandeWalle, C.J.