Filed 8/17/10 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2010 ND 151

Duane Huber, Plaintiff and Appellee

v.

Farmers Union Service Association 

of North Dakota, Defendant and Appellant

and

Farmers Union Standard Insurance Company, 

National Farmers Union Property and Casualty

Company, Farmers Union Mutual Insurance Company

of North Dakota, Defendants

No. 20090388

Appeal from the District Court of Stutsman County, Southeast Judicial District, the Honorable John E. Greenwood, Judge.

AFFIRMED.

Opinion of the Court by Maring, Justice.

Irvin B. Nodland, P.O. Box 640, Bismarck, N.D. 58502-0640, for plaintiff and appellee.

Steven A. Storslee (argued) and Chris Arnold Edison (on brief), P.O. Box 4007, Bismarck, N.D. 58502-4007, for defendant and appellant.

Huber v. Farmers Union Service Ass’n

No. 20090388

Maring, Justice.

[¶1] Farmers Union Service Association of North Dakota (“Farmers Union”) appeals from a judgment awarding Duane Huber $34,534 plus interest, costs and disbursements in Huber’s breach of contract action to recover his retirement benefits.  We conclude the district court did not err in its interpretation of the contracts between the parties and in holding the contracts were not unlawful and void as a matter of law.  We further conclude the court did not err in awarding Huber prejudgment interest.  We affirm.

I

[¶2] Huber was a licensed insurance agent in North Dakota who began selling insurance for National Farmers Union Property and Casualty Company and Farmers Union Mutual Insurance Company in 1975.  Under the local agent’s agreements Huber signed, Farmers Union acted as the general agent for these companies.  The local agent’s agreement with National Farmers Union Property and Casualty Company provided in part:

6.  
Termination
:

(a) The parties hereto agree that each party hereto without assigning cause may terminate this Agreement at any time upon written notice mailed certified or registered, postage fully paid, to the other parties at the address shown in this Agreement at least thirty (30) days before the date of termination.  Upon termination LOCAL AGENT shall be paid all commission earnings and bonuses currently due and unpaid less any obligations due INSURER, or GENERAL AGENT, and thereafter LOCAL AGENT shall have no further interest in the contracts or policies of INSURER or commission earnings thereof and bonuses thereon whether sold by him during or before the life of this Agreement, . . . .

 

The local agent’s agreement with Farmers Union Mutual Insurance Company similarly provided in part:

14.  The parties hereto agree that any party hereto may terminate this contract at any time upon written notice mailed certified or registered, postage fully paid, to the other parties at the address shown above at least thirty (30) days before date of termination.  Upon termination LOCAL AGENT shall be paid all earned commissions currently due and unpaid less any obligations due INSURER or GENERAL AGENT and thereafter shall have no further interest in the policies or contracts of INSURER or commission thereon whether sold by him during or before the life of this contract . . . .

 

[¶3] Each local agent’s agreement contained an identical agent’s annuity benefit attachment.  The agent’s annuity benefit attachments provided that the companies would pay “an annuity benefit as described herein on the total combined commissions earned on paid-for premiums written or serviced by Local Agent for [the companies] during each calendar year, subject to the conditions and limitations stated herein, . . .”  The annuity benefits payable were to be applied by the companies “to the purchase of a deferred to age 65 annuity contract for LOCAL AGENT or to fund LOCAL AGENT’S Internal Revenue Service qualified retirement plan . . . .”  One of the conditions and limitations provided in the attachments was that “[t]he annuity benefits hereunder shall be payable only if this LOCAL AGENT’S Agreement and Attachment are in effect on the last day of the applicable calendar year, unless earlier terminated by death of LOCAL AGENT.”

[¶4] On November 27, 2002, a federal district court jury found Huber guilty of felony charges involving money laundering, fraud, making false statements, and tax related crimes.  Huber was sentenced to five years in prison and ultimately ordered to forfeit $3.9 million.  
See
 
United States v. Huber
, 462 F.3d 945 (8th Cir. 2006); 
United States v. Huber
, 404 F.3d 1047 (8th Cir. 2005).  These convictions were not related to Huber’s work as an insurance agent.  On December 2, 2002, the North Dakota Insurance Commissioner, based on Huber’s federal court convictions, issued a cease and desist order preventing Huber “from soliciting, transacting, or otherwise engaging in the business of insurance.”  The cease and desist order further provided that if Huber failed to request a hearing “within 30 days,” the cease and desist order would become “permanent.”  Huber requested a hearing.

[¶5] On December 5, 2002, the general manager of Farmers Union sent Huber a letter which stated in part:

This is to notify you of the termination of your local agent’s agreement with the Farmers Union Companies along with any other appointments secured through Farmers Union Service Association, Ltd.

 

This termination is based on, but not limited to, events that are in violation of the contract, culminating with the recent “cease and desist” order from the North Dakota Insurance Department.  Without a North Dakota insurance license, you will not be able to perform the functions required of a Farmers Union insurance agent.

 

[¶6] On December 10, 2002, the federal district court issued an order freezing Huber’s accounts and assets.  On July 1, 2003, Huber entered into a consent order with the Insurance Commissioner that allowed his insurance agent license to be revoked.  In a letter dated September 21, 2004, Farmers Union informed the United States Attorney that it was holding $253,869.11 in “unremitted earned commissions” belonging to Huber, and in November 2005, Farmers Union issued a check to the federal government for that amount.  These funds did not include the annuity benefit of $34,534 based on Huber’s production for calendar year 2002.  The federal court order freezing Huber’s assets was lifted in March 2006.

[¶7] 
After Farmers Union refused to pay him his annuity benefit for calendar year 2002, Huber brought this breach of contract action against Farmers Union to recover the annuity benefit of $34,534.  Farmers Union argued its contractual obligations to Huber were extinguished as a matter of law upon his federal court convictions for felony fraud and upon the Insurance Commissioner’s issuance of the cease and desist order.  Farmers Union also argued Huber was not entitled to the annuity benefit because his local agent’s agreements were terminated on December 5, 2002, and therefore those agreements were not in effect on the last day of the calendar year.

[¶8] Through a series of summary judgment rulings, the district court rejected Farmers Union’s arguments.  The court held Farmers Union was obligated to pay Huber the $34,534 annuity benefit because the parties’ agreements required 30 days notice before termination, Huber was not given notice of termination until early December 2002, so the 30 days did not expire until early January 2003.  The court held, consequently, the local agent’s agreements remained in effect on the last day of 2002, entitling Huber to the annuity benefits under the parties’ agreements.  The court awarded Huber $34,534 plus interest, costs and disbursements.  This award included prejudgment interest dating from January 1, 2003, because, the court reasoned, Farmers Union “had the beneficial use of the funds for any purposes of its business” at that time.

II

[¶9] Farmers Union argues the district court erred in holding its contractual obligations to Huber were not extinguished as a matter of law upon his felony fraud conviction and upon the Insurance Commissioner’s issuance of the cease and desist order.

[¶10] Our standard of review on summary judgment is well established:

Under N.D.R.Civ.P. 56, summary judgment is a procedural device for promptly resolving a controversy on the merits without a trial if there are no genuine issues of material fact or inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law.  The party moving for summary judgment must show there are no genuine issues of material fact and the case is appropriate for judgment as a matter of law.  A district court’s decision on a motion for summary judgment is a question of law that we review de novo on the record.  In determining whether summary judgment was appropriately granted, we view the evidence in the light most favorable to the party opposing the motion, giving that party the benefit of all favorable inferences which can reasonably be drawn from the record.

 

Kambeitz v. Acuity Ins. Co.
, 2009 ND 166, ¶ 8, 772 N.W.2d 632 (quoting 
Bragg v. Burlington Res. Oil and Gas Co. LP
, 2009 ND 33, ¶ 5, 763 N.W.2d 481).

A

[¶11] Farmers Union argues the local agent’s agreements were extinguished as a matter of law based on federal and state statutes.  Under 18 U.S.C. § 1033(e)(1)(A), “[a]ny individual who has been convicted of any criminal felony involving dishonesty or a breach of trust, or who has been convicted of an offense under this section, and who willfully engages in the business of insurance whose activities affect interstate commerce or participates in such business, shall be fined as provided in this title or imprisoned not more than 5 years, or both.”  Section 26.1-26-42(5), N.D.C.C., allows the Insurance Commissioner to revoke an insurance agent’s license if the “licensee has been convicted of a felony.”  Section 9-08-01, N.D.C.C., provides:

Any provision of a contract is unlawful if it is:

1. Contrary to an express provision of law;

2. Contrary to the policy of express law, though not expressly prohibited; or

3. Otherwise contrary to good morals.

 

Because Huber was convicted of a felony involving dishonesty or a breach of trust under 18 U.S.C. § 1033(e)(1)(A), Farmers Union argues it became unlawful for Huber to act as an insurance agent after the date of his convictions and the Insurance Commissioner therefore had grounds to revoke his license under N.D.C.C. § 26.1-26-

42(5).  Consequently, according to Farmers Union, the local agent’s agreements were void as a matter of law under N.D.C.C. § 9-08-01 and were not in effect on the last day of 2002.  Farmers Union’s argument is unpersuasive.  

[¶12] First, this Court’s decisions clearly demonstrate that a provision of a contract must in and of itself be inherently illegal to be unlawful for purposes of N.D.C.C. § 9-08-01.  For example, in 
North Central Jobbers v. Snortland
, 329 N.W.2d 614, 618-

19 (N.D. 1983), this Court held there was nothing inherently illegal in a contract to transfer title to trucks and trailers even if the contract was entered into merely as a subterfuge to evade provisions of the Interstate Commerce Act.  In 
State Bank of Towner, Inc. v. Rauh
, 288 N.W.2d 299, 307 (N.D. 1980), this Court held there was nothing inherently illegal in a contract to purchase cattle, feed, and to sell cattle even if the contract was a facade to evade taxes.  So too, in 
Beck v. Lind
, 235 N.W.2d 239, 245 (N.D. 1975), this Court ruled a contract of employment for performing personal services was not per se illegal and invalid even if it involved an arrangement to avoid paying contributions to Social Security.  In this case, there is nothing inherently unlawful in the provisions of the parties’ local agent’s agreements.

[¶13] Second, none of the cases relied on by Farmers Union support its argument that the local agent’s agreements are unlawful under N.D.C.C. § 9-08-01.  
In 
Mees v. Grewer
, 63 N.D. 74, 79, 245 N.W. 813, 814 (1932), the plaintiff sought to recover commissions under a secret contract with the defendant that required the plaintiff to violate fiduciary duties owed to the plaintiff’s employer.  The Court denied recovery because the contract violated public policy.  
Id.
 at 85, 245 N.W. at 817.  In 
Hosmer v. Sheldon Sch. Dist. No. 2
, 4 N.D. 197, 198, 201, 59 N.W. 1035, 1036 (1894), a teacher who did not have a valid teaching certificate sought to recover unpaid wages from a school district.  The Court denied recovery, not based on the predecessor statute to N.D.C.C. § 9-08-01, but on a specific statute that declared:  “‘Any contract made in violation of [statute prohibiting employment of teachers who do not hold a lawful certificate of qualification] shall be void.’”  
Hosmer
, at 200, 59 N.W. at 1036 (internal citation omitted).  In 
Muscatell v. North Dakota Real Estate Comm’n
, 546 N.W.2d 374, 375-76 (N.D. 1996), a licensed real estate broker was convicted of multiple felony counts in federal court, and after the Commission revoked his license, the broker appealed arguing estoppel barred the Commission from revoking his license because it had agreed to forego disciplinary proceedings until the United States Supreme Court ruled on his petition for writ of certiorari.  This Court ruled the presumption of guilt of the federal felonies attached to the broker upon his federal conviction and, relying on N.D.C.C. § 9-08-01, held the “Commission had no authority to violate public policy by agreeing to refrain from disciplinary action pending resolution of Muscatell’s appeal.”  
Muscatell
, at 378. 
 
Hosmer
 was decided under a specific statute addressing the employment of uncertificated teachers, and 
Mees
 and 
Muscatell
 involved contractual provisions that in and of themselves violated public policy.

[¶14] Third, the record on appeal does not indicate that Huber was involved in any aspect of the insurance business after the date of his federal court convictions.  Under 18 U.S.C. § 1033(f)(1), the term “business of insurance” is defined as “the writing of insurance, or, . . . the reinsuring of risks, by an insurer, including all acts necessary or incidental to such writing or reinsuring and the activities of persons who act as, or are, officers, directors, agents, or employees of insurers or who are other persons authorized to act on behalf of such persons.”  The “business of insurance” is defined almost identically in N.D.C.C. § 26.1-02.1-01(1).  Cases construing these provisions have involved affirmative actions taken by the person or entity subject to the restriction.  
See, e.g.
, 
Beamer v. NETCO Inc.
, 411 F. Supp. 2d 882, 889 (S.D. Ohio 2005) (convicted felon was engaged in the “business of insurance” under 18 U.S.C. § 1033(f)(1) by developing software program which produced insurance forms for insurance title agencies and maintaining relationships with insurance underwriters); 
Szarkowski v. Reliance Ins. Co.
, 404 N.W.2d 502, 504-05 (N.D. 1987) (company that issued performance bond was in the “business of insurance” for purposes of N.D.C.C. ch. 26.1-04).  Farmers Union has not cited, nor have we found, any authority to support the proposition that Huber’s acceptance of commissions or benefits based on work he performed before the dates of his federal court convictions and the Insurance Commissioner’s cease and desist order constituted engaging in the “business of insurance.”  Indeed, Farmers Union withheld $253,869.11 in “unremitted earned commissions” belonging to Huber and ultimately forwarded the commissions to the federal government.

[¶15] We conclude the district court did not err in ruling the local agent’s agreements were not unlawful under N.D.C.C. § 9-08-01.

B

[¶16] 
Farmers Union argues its obligations to Huber under the local agent’s agreements were extinguished under the doctrines of frustration of purpose and impossibility of performance because the “sole purpose” of the agreements was to allow Huber to act as an insurance agent, and after the federal court convictions and the cease and desist order, Huber could no longer act as an insurance agent.  
See also
 N.D.C.C. § 9-04-03 (contract with single object is void if object is “wholly impossible of performance”).  The district court ruled the cease and desist order was “temporary in nature,” and “temporary impossibility of performance or temporary frustration of purpose of the contract does not discharge the contractual obligations of a contracting party.”  

[¶17] Even if we assume the district court ascribed the wrong reason for the result it reached, this Court will not reverse if the result is the same under the correct law and reasoning.  
See
 
State ex rel. K.B. v. Bauer
, 2009 ND 45, ¶ 18, 763 N.W.2d 462.  There is a much more fundamental reason why neither doctrine applies in this case.  In 
Red River Wings, Inc. v. Hoot, Inc.
, 2008 ND 117, ¶ 56, 751 N.W.2d 206, this Court explained:

[T]he doctrine of frustration of purpose [and] the doctrine of impossibility . . . are closely related.  Frustration of purpose “occurs when ‘after a contract is made, a party’s principal purpose is substantially frustrated 
without his fault
 by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made.’”  The doctrine of impossibility or impracticality is similarly described as “[w]here, after a contract is made, a party’s performance is made impracticable 
without his fault
 by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made, his duty to render that performance is discharged, unless the language or the circumstances indicate the contrary.”  
Neither doctrine applies if either the frustration or the impossibility is caused by a party to the contract
.

 

(Citations omitted; emphasis added.)  

[¶18] The principle that the doctrines of frustration of purpose and impossibility of performance do not apply if the frustration or impossibility is caused by one of the contracting parties is explained in the Restatement (Second) of Contracts (1981).  Illustration 5 to Comment a of Restatement (Second) of Contracts § 264 (1981) (relating to prevention of performance by governmental regulation or order) states:

5.  A and B make a contract under which A is to employ B for a year.  B is unable to complete his performance because he is arrested and imprisoned for a burglary that he has committed.  Because his inability was due to his own fault, B’s duty to work for a year is not discharged, and B is liable to A for breach of contract.  See Comment 
d
 to § 261.

 

Comment d to Restatement (Second) of Contracts § 261 (1981) (relating to discharge by supervening impracticability) states:

d.
  
Impracticability
.  Events that come within the rule stated in this Section are generally due either to “acts of God” or to acts of third parties.  If the event that prevents the obligor’s performance is caused by the obligee, it will ordinarily amount to a breach by the latter and the situation will be governed by the rules stated in Chapter 10, without regard to this Section.  See Illustrations 4-7 to § 237.  If the event is due to the fault of the obligor himself, this Section does not apply.  As used here “fault” may include not only “willful” wrongs, but such other types of conduct as that amounting to breach of contract or to negligence.

 

[¶19] In this case, Farmers Union argues the frustration or impossibility was caused by Huber, a party to the local agent’s agreements.  
Therefore, we conclude the district court did not err in ruling that neither doctrine applies.

C

[¶20] Farmers Union argues that because North Dakota is an “at will” employment state under which a contract for employment may be terminated with or without cause, 
see
 
Kortum v. Johnson
, 2008 ND 154, ¶ 20, 755 N.W.2d 432; N.D.C.C. § 34-

03-01, the termination provisions in the local agent’s agreements did not provide the sole grounds for terminating Huber.  Farmers Union relies on 
Thompson v. Associated Potato Growers, Inc.
, 2000 ND 95, ¶ 11, 610 N.W.2d 53, in which this Court agreed with courts that “have construed employment contracts to permit an employer to terminate an employee for good cause even if the contract provides reasons for termination which do not specifically mention good cause.”  Because the termination provisions in the agreement do not mention “good cause,” Farmers Union argues it had the right to terminate Huber immediately for good cause without giving 30 days notice.

[¶21] Farmers Union’s reliance on general principles applicable in a typical employer-employee relationship is misplaced.  Farmers Union drafted the local agent’s agreements, and those agreements expressly provide that Farmers Union considers local agents to act “solely as an independent contractor.”  An employer-

employee relationship differs from an independent contractor relationship.  
See
 
Equal Employment Opportunity Comm’n v. Zippo Mfg. Co.
, 713 F.2d 32, 35 (3d Cir. 1983) (Age Discrimination in Employment Act protects only employees and not independent contractors); 
Imaginative Research Assocs., Inc. v. Ramirez
, No. 3:07CV861 (JBA), 2010 WL 2351483, at *13 (D. Conn. June 8, 2010) (defendant’s reliance on restrictive covenant case law was misplaced because a restrictive covenant is ancillary to an employment agreement, and agreement was not employment agreement but an independent contractor agreement); 
Varisco v. Gateway Science and Eng’g, Inc.
, 83 Cal. Rptr. 3d 393, 398-99 (Cal. Ct. App. 2008) (independent contractor agreement can include at-will clause, but “[s]uch a clause does not, in and of itself, change the independent contractor relationship into an employee-employer relationship”); 
Ketcham v. Hall Syndicate, Inc.
, 236 N.Y.S.2d 206, 210 (N.Y. Sup. Ct. 1962) (statute providing contract to render personal services may not be enforced against employee beyond seven years applied to normal employer-employee relationship, not where one of the parties performed services as an independent contractor).  Under the circumstances here, we believe the general rules of contract interpretation apply.

[¶22] “‘Written contracts are construed to give effect to the parties’ mutual intention when the contract was formed, and if possible, we look to the writing alone to determine the parties’ intent.’”  
Horob v. Farm Credit Servs.
, 2010 ND 6, ¶ 16, 777 N.W.2d 611 (quoting 
Doeden v. Stubstad
, 2008 ND 165, ¶ 14, 755 N.W.2d 859). “The language of a contract is to govern its interpretation if the language is clear and explicit and does not involve an absurdity.”  N.D.C.C. § 9-07-02.  The termination provisions of the local agent’s agreements are clear and explicit and do not involve an absurdity.  The termination provisions require 30 days notice “before the date of termination.”  If Farmers Union wanted the right to terminate immediately for “good cause,” it could have included that provision in the agreements.  It did not.  Under the undisputed facts in this case, the 30 days notice did not expire until early January 2003.  Therefore, the local agent’s agreements were effective on the last day of 2002, and Huber was entitled to his annuity benefit for calendar year 2002.

[¶23] We conclude the district court did not err in awarding Huber his annuity benefit of $34,534.

III

[¶24] Farmers Union argues the district court erred in awarding Huber prejudgment interest from January 1, 2003, to the current date.

[¶25] Prejudgment interest in contract cases is allowed under N.D.C.C. § 32-03-04, which provides:

Every person who is entitled to recover damages certain or capable of being made certain by calculation, the right to recover which is vested in the person upon a particular day, also is entitled to recover interest thereon from that day, except for such time as the debtor is prevented by law or by the act of the creditor from paying the debt.

 

Prejudgment interest is required by N.D.C.C. § 32-03-04 if damages are certain or capable of being made certain by calculation.  
Village West Assocs. v. Boeder
, 488 N.W.2d 376, 380 (N.D. 1992).  Farmers Union argues prejudgment interest was improperly awarded here because it was prevented by law, i.e., the federal district court order freezing Huber’s accounts and assets, from paying the debt.

[¶26] The federal district court’s order freezing Huber’s accounts and assets did not prevent Farmers Union from parting with Huber’s annuity benefit while the order was in effect.  Indeed, Farmers Union paid the federal government $253,869.11 in “unremitted earned commissions” belonging to Huber four months before the federal district court’s order was lifted.  The federal district court order prohibited persons and entities from removing Huber’s accounts and assets “from the jurisdiction of this Court.”  Farmers Union did not deposit the annuity benefit with the federal district court under the procedure set forth in Fed. R. Civ. P. 67, but instead, as the district court pointed out, kept the annuity benefit and “had the beneficial use of the funds for any purposes of its business.”  
See
 
KBM, Inc. v. MacKichan
, 438 N.W.2d 181, 185 (N.D. 1989) (employee and stockholder of corporation was entitled to prejudgment interest where corporation did not avail itself of any procedures for deposit of funds under N.D.C.C. §§ 9-12-24 and 9-12-25, or under N.D.R.Civ.P. 67).

[¶27] We conclude the district court did not err in awarding Huber prejudgment interest from January 1, 2003.

IV

[¶28] The judgment is affirmed.

[¶29] Mary Muehlen Maring

Daniel J. Crothers

Dale V. Sandstrom

Carol Ronning Kapsner

Gerald W. VandeWalle, C.J.